UNITED STATES, Appellee

v

BENNIE STEWART, JR., Lance Corporal,
U. S. Marine Corps, Appellant

19 USCMA 58, 41 CMR 58

No. 22,378

November 7, 1969

Commander E. M. Fulton, Jr., JAGC, USN, and Lieutenant Kenneth F. Ripple, JAGC, USNR, were on the pleadings for Appellant, Accused.

Lieutenant Colonel Charles J. Keever, USMC, was on the pleadings for Appellee, United States.

## Opinion of the Court

DARDEN, Judge:

Following his plea of guilty the accused was convicted by a general court-martial in Vietnam of desertion with intent to avoid hazardous duty and of breaching a lawful division general order by being in an off-limits area, in violation of Articles 85 and 92, Uniform Code of Military Justice, 10 USC §§ 885 and 892, respectively. His sentence included a dishonorable discharge, total forfeitures, reduction to the pay grade of E–1, and confinement at hard labor for three years, later reduced to two by the convening authority. We have the case to consider whether the accused's plea of guilty was improvident.

The law officer's inquiry into the adequacy of the guilty plea, coupled with the accused's acknowledgment of guilt and his admission while testifying in mitigation that he had indeed spent time in Son Sha Village, satisfies us that accused did, in fact, violate a First Marine Division Order by having been in this "off-limits" area.

The remainder of his mitigating statement, however, appears to render improvident his plea of having deserted with intent to avoid hazardous duty. A part of his statement follows:

"I am guilty of intending to avoid hazardous duty by my own choice, however, and not because I was ordered to the field and would like to explain to the Court what I mean.

"In late May 1967, I joined the 5th Marines at Chu Lai, was assigned to Lima, 3/5. I participated in operations UNION II, ADAIRE, CALHOON, ARIZONA, SWIFT and SHELBYVILLE. After SHELBYVILLE, we moved into 2/1's old area near Hoi An, working two and three day patrols, and sweeps. In January, 1968 we went to Hill 55, then to Phu Bai and early in February to Hue City where I participated in that operation until early March. When

58

Hue City ended 3/5 went on to Operation HOUSTON I, where I was medevaced by the battalion surgeon to Phu Bai and then to NSA Danang to have pollen sacs removed from my sinuses.

"Before Hill 55 and Hue City I was given a medical justification not to return to the field by the Battalion Surgeon, when I first had pollen sacs removed from my sinuses because of a hereditary disorder in December 1967. In spite of this excuse I volunteered to return to the bush. During January 1968, Hue City and most of Houston I, I never asked to be taken out of the field and I could have done so. I won a Purple Heart in Hue City and still did not ask to be taken out of the field because I am a Marine who cannot work in the rear while I still have friends out there in the bush. So I went UA knowing that I was avoiding hazardous duty.

"If I were given another chance to return to duty right now I would again put in for the field. This is the way I am and this is why I pleaded guilty."

Following a brief cross-examination of the accused, the law officer and defense counsel then engaged in the following colloquy:

"LO: I am concerned about the inconsistency in the plea of guilty. It seems to me that what the accused is saying is that he intended to desert to avoid hazardous duty namely: combat. However, he did it so that he could get into combat. Do you see that?

"DC: The statement said, sir, that he realized that he intended to avoid hazardous duty during his UA, but he only . . . for combat operations when the doctor had given him an excuse to stay in the rear, medically, he waived that and volunteered to go back to the bush, and he would again go back to the bush, he wouldn't work in the rear, he would rather go out on the operations. So, by staying away he knows that he was avoiding going out on operations

because he was either staying away or going out on operations. He wouldn't work in the rear, he would rather be in the operations.

"LO: Where does the combat come into play?

"DC: When he left his unit they were going on an operation. He knew that they would be going on another operation. His unit had been in constant contact for the 11 months that he was with them.

"TC: I believe that he said that prior to his going UA he had medical justification for not going back to the field but he waived that because he likes being in the field more than he likes being in the rear. But I don't believe he said that he went UA for the purpose of getting back into combat. At least . . .

"DC: That's correct.

"LO: Are you satisfied that there is no inconsistency?

"DC: I see none.

"TC: I see none."

In our opinion, there is a fundamental difference between pleading guilty to such a desertion charge because one intends to avoid hazardous duty and pursuing the same course only because one believes that a consequence of his act was the avoidance of hazardous duty, regardless of intent. We believe he may have pleaded guilty because he coincidentally missed hazardous duty while absent without leave. His statement is so ambiguous that it should not support a conviction for desertion with intent to avoid hazardous duty. Consequently, we are not satisfied that his plea was provident.

Accordingly, the conviction for desertion with intent to avoid hazardous duty and the sentence are set aside. The record of trial is returned to the Judge Advocate General of the Navy. The Court of Military Review may affirm a finding of absence without leave and reassess the sentence or order a rehearing.

Chief Judge QUINN and Judge FERGUSON concur.