UNITED STATES, Appellee

v

DONALD W. THOMPSON, Private First Class,
U. S. Army, Appellant

21 USCMA 526, 45 CMR 300

No. 24,914

July 14, 1972

*Captain William X. Parsons* argued the cause for Appellant, Accused. With him on the brief were *Colonel George J. McCartin, Jr., Colonel Arnold I. Melnick, Lieutenant Colonel Joseph E. Donahue, Lieutenant Colonel James D. Clause,* and *Captain Richard H. Dickman.*

*Lieutenant Colonel Ronald M. Holdaway* argued the cause for Appellee, United States. With him on the brief were *Captain Richard L. Menson, Captain David E. Wilson, Captain Benjamin P. Fishburne, III, Captain Glenn R. Bonard,* and *Captain Robert J. Moye.*

DARDEN, Chief Judge:

The issue before us is the providence of the accused's guilty plea to wrongful possession of heroin, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934.

During the guilty plea inquiry, accused informed the military judge that his co-accused, Jones, told him he had been advised that heroin had been planted in the accused's room. Accused said he spoke with Jones's informant and verified the report. He and Jones proceeded to accused's cubicle and found the heroin concealed in a wall panel. While they were in the process of removing it, the first sergeant entered and caught them. Accused's purpose in removing the drug was to "get rid of it." Jones also represented to the judge that "we were going to turn it in, either that or dump it on the guy's bed that put it in the wall there cause we didn't want to have anything to do with it."

When the judge expressed concern that the accused's stated intention to turn the heroin in eliminated any criminal intent on their part, Thompson declared, "The thing is, sir, we were scared at the moment. We just wanted to get rid of it. And we didn't know what would happen. We didn't know if they'd think it was ours or what." After he reiterated that "we was mainly wanting to get rid of it," the judge ruled that if the accused intended to turn the drug in, their possession would not be wrongful. He added that if they intended to do anything else with it, including moving it out of their area, the possession "would not be innocent."

A short recess followed, during which the accused presumably conferred with their counsel. On reconvening, both accused declared they felt their possession was wrongful, but maintained that their purpose was to rid themselves of the heroin. The judge then accepted the pleas and entered the findings of guilty.

In mitigation and extenuation, ac-cused testified and reiterated that his purpose in removing the heroin from the wall cavity was "to get rid of it." He added that "I thought about putting it in Specialist Vandenbloom's [who allegedly had placed the drug in accused's cubicle] room, sit it on his bed and just leave it. Just take it out and get rid of it. I mean just throw it away."

Accused also testified that in his locker he had seven other empty heroin vials that he had picked up outside the barracks and intended to use for paint containers.

Article 45, Uniform Code of Military Justice, 10 USC § 845, provides that if an accused, after a plea of guilty is entered, "sets up matter inconsistent with the plea, . . . a plea of not guilty shall be entered in the record, and the court shall proceed as though he had pleaded not guilty." Where inconsistent matter is set up, the judge has the duty to inquire into the circumstances and, if the accused persists in his statements, to reject the plea. United States v Lewis, 18 USCMA 287, 39 CMR 287 (1969); United States v Vance, 17 USCMA 444, 38 CMR 242 (1968); United States v Chancelor, 16 USCMA 297, 36 CMR 453 (1966); United States v Thomas, 14 USCMA 223, 34 CMR 3 (1963).

Thompson's explanation during the plea proceedings and in mitigation and extenuation that the heroin had been secreted in his room without his knowledge and that his purpose in removing it was to rid himself of it conflicts with his plea of guilty to its wrongful possession. In United States v West, 15 USCMA 3, 6, 34 CMR 449 (1964), the Court recognized "there are . . . circumstances . . . under which possession of narcotics is not unlawful, although the contrary is presumed, in the absence of any explanation." It went on to state, at page 7:

"The concept involved here is simply another aspect of the doctrine of *mens rea,* as applied to the offense of wrongful possession of narcotics, *i.e.,* the wrongfulness involved. See United States v Hayes, 8 USCMA 627, 25 CMR 131; United States v Grover, supra; Morissette v United States, 342 US 246, 96 L Ed 288, 72 S Ct 240 (1952)."

Criminal liability cannot be imposed for possession of a forbidden substance that is truly ▪ planted evidence, when the accused's sole purpose in controlling it for a few moments is to rid himself of it. The significant point was stated in Masters v United States, 42 App DC 350, 356 (1914):

". . . The word 'wrongful,' like the words 'wilful,' 'malicious,' 'fraudulent,' etc., when used in criminal statutes, implies a perverted evil mind in the doer of the act. The word 'wrongful' implies the opposite of right, a perverted evil mind in the doer of the act."

Article 45 compels the entry of a plea of not guilty when an accused introduces information inconsistent with his plea of ▪ guilty. United States v Lewis, supra. The words of the statute manifest a congressional intent that guilt be acknowledged consistently from the plea through the sentence. United States v Thomas; United States v Chancelor, both supra. A strict application of Article 45 should end simultaneous pleas of guilty and assertions of innocence.

If one believes his statement, the accused explained his possession of the heroin in question in a manner consistent only with his innocence.

United States v West, supra. The judge was, therefore, obligated to reject his plea. United States v Lewis, supra.

The decision of the Court of Military Review is reversed, and the record of trial is returned to the Judge Advocate General of the Army. A rehearing may be ordered.

Judge DUNCAN concurs.

QUINN, Judge (dissenting):

Before final entry of his plea of guilty, accused consulted with counsel specifically to consider the trial judge's admonition that if he proposed, as initially indicated, to "turn . . . in" the 200 vials of heroin his "possession was innocent," and he assured the judge that in his "own mind . . . [he was] in fact, guilty." He did not at trial, and he does not on this appeal, repudiate his representation to the judge that he decided to "get rid" of only the "rest" of the heroin; *i.e.,* the 180 vials remaining after the 20 he had earlier removed from behind the wall panel and had laid aside. I have no doubt, therefore, that the accused's conduct was wrong and that his plea of guilty was provident.

Briefly, the story that emerged from the trial judge's inquiry into the providence of the accused's plea of guilty is that at breakfast a soldier, whom both accused refused to identify, informed Jones that Specialist Vandenbloom had "put the stuff" in "Thompson's area."[1] Jones testified that the informant said to him, " 'If I *were you,* I would be getting it out of there,' " because there would probably be " 'a shakedown this month and *you'll* get caught.' "[2] (Emphasis supplied.) In turn, Jones told the accused. The ac-

---

[1] Later, during sentence proceedings, Jones amplified this testimony to indicate he was informed that the heroin had been put "in the wall" in "Thompson's area." It is more than passing strange that both Jones and the accused immediately knew this meant that the heroin was behind a panel above a window in Thompson's room, and it could be reached only by standing on Thompson's bed to unscrew the panel from the wall.

[2] Jones did not share the accused's quarters. Although asked, he did not explain why the informant suggested that he, rather than Thompson, should get the heroin "out of there." The point was not pursued.

cused went to the unnamed soldier and confirmed the report. He returned to his room, and he and Jones unscrewed a panel above a window in his room. According to the accused, they removed 20 vials from behind the panel and "laid them on the table"; then they *decided to take the rest of it out and get rid of it."* (Emphasis supplied.) They "just got part of it out when the First Sergeant broke in the door" and apprehended them. Asked whether the "version" given by the accused was correct, Jones responded in the affirmative. He added, however, that they "were going to turn it in, either that or dump it on the guy's bed that put it in the wall." Supplementing this response, the accused noted that they "were scared" and they "just wanted to get rid of it."

Considering the alternatives as to disposition of the heroin presented by the accused and Jones and the judge's comments as to what would constitute innocent possession, as opposed to wrongful possession, their responses after their conference with counsel left no doubt that they disavowed any intention of turning in the "rest" of the heroin to some person in authority. It is equally clear that they proposed to return the heroin to Vandenbloom. Possession for the purpose of transfer to an individual known to have no lawful right to receive it, as the accused concededly knew Vandenbloom had no right, is wrongful possession. Consequently, so far as appears from the accused's account of the incident at the hearing before the trial judge, the facts demonstrate his guilt of the offense and fully justified acceptance of his plea of guilty.

Certain statements were made by accused during the sentence proceedings. Appellate defense counsel perceive these as negating the earlier contention that the accused proposed to return the "rest" of the heroin to Vandenbloom. See United States v Lewis, 18 USCMA 287, 39 CMR 287 (1969), pages 289 and 290; United States v Stewart, 19 USCMA 58, 41 CMR 58 (1969).

Both Jones and the accused testified in mitigation, and both elaborated further on the circumstances of their possession. The accused admitted that besides the vials of heroin taken from behind the panel, he had seven empty "heroin vials" in his locker, which he intended, that morning, "to put paint in" because the paint containers of a set his wife had sent him "came apart" and the heroin vials were "the only thing that . . . [he] could find that would hold together"; he maintained that he had gotten the vials "[o]ut on the ground." The accused also admitted that he had taken one vial from one of the "paper sack[s]" in which they were packed, but he did so because he had "just wanted to make sure" it contained heroin. At the close of his direct testimony, he was asked again "what . . . [he was] going to do with" the heroin, and he reiterated his earlier representation about "putting it in Specialist Vandenbloom's room." To this, he added: "Just take it out and get rid of it. I mean just throw it away." He did not say directly or indirectly that he was going to throw away the 20 vials that had been set aside on the table.

Jones repeated substantially what he said during the judge's inquiry. In addition, he admitted he knew that the person who had told him Vandenbloom had placed the heroin in "Thompson's area" had had "something to do with" bringing the heroin into the company area. He acknowledged that before he unscrewed the wall panel, he and the accused had "pulled the locker doors open" and hooked them to a nail driven into a wooden stand so that passage into Thompson's room was blocked and "no one . . . on the outside could push in." Asked what he was going to do with the heroin, he answered: "just get rid of it." He too did not indicate that he included the 20 vials that were removed before they "decided to take [out] the rest" of the vials.

As indicated earlier, there is no doubt that before the plea of guilty

was accepted, the accused and Jones disavowed any intention to turn in the heroin to a competent superior. Nothing in their testimony during sentence proceedings repudiates that disavowal. The only new matter presented was that as an alternative to returning the heroin to Vandenbloom, the accused might have "just throw[n] it away." In United States v Grover, 10 USCMA 91, 27 CMR 165 (1958), the accused did not know "exactly what . . . [he] was going to do" with marihuana extracted from a cache belonging to others, but later, fearing apprehension, "threw away the quantity acquired earlier in the day." *Ibid.*, at page 93. Assessing the accused's testimony for the purpose of determining whether it raised an issue requiring the trial judge to instruct the court members as to innocent possession, we held that it did not because the accused's possession was wrongful.

As in *Grover*, the accused knowingly and deliberately exercised control over a substance he was informed was, and which he verified to be, heroin. He first took possession of 20 vials, which his statements fairly indicate he intended to keep for himself. As to the "rest," his possession was wrongful if exercised for the purpose of transferring it to a person having no legal right to have it, and *Grover* held that deliberately taking possession of a prohibited substance and later throwing it away raised no "defense of innocent possession." *Ibid.*, at page 93. Consequently, no assertion or testimony at any stage of the trial proceedings negated the accused's plea of guilty.

I would affirm the decision of the United States Army Court of Military Review.