UNITED STATES, Appellee,

v.

Barry A. ROWE, Airman, U.S. Air Force, Appellant.

No. 38,395.
ACM 22517.

U. S. Court of Military Appeals.

April 27, 1981.

For Appellant: *Major Wade B. Morrison* (argued); *Colonel Larry G. Stephens* (on brief).

For Appellee: *Major Robert T. Mounts* (argued); *Colonel James P. Porter* (on brief).

Opinion of the Court

FLETCHER, Judge:

The appellant was charged with the wrongful possession and use of marihuana in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. In addition, he was charged with the wrongful possession of both lysergic acid diethylamide and methamphetamine, in violation of Article 92, UCMJ, 10 U.S.C. § 892. A general court-martial composed of members found the appellant guilty of the three possession specifications. He was sentenced to a bad-conduct discharge, confinement at hard labor for 3 years, total forfeitures and reduction to the lowest enlisted pay grade. The convening authority approved this sentence, which the United States Air Force Court of Military Review affirmed. 8 M.J. 542 (1979).

The following issue was granted by the Court:

WHETHER THE MILITARY JUDGE ERRED BY REFUSING A DEFENSE REQUEST TO FULLY DEFINE WRONGFULNESS OF POSSESSION AS IT RELATED TO THE APPELLANT'S TESTIMONY REGARDING SPECIFICATION 1 OF CHARGE 1

AND SPECIFICATIONS 1 AND 2 OF CHARGE II.

In particular, we are concerned as a matter of law with the specific guilty state of mind necessary to sustain a conviction for wrongful drug possession under the aforementioned charges. The Government asserts that, as a matter of law, the required *mens rea* would include a specific intent of an accused to rid himself of planted drugs by returning them to their suspected owner. We disagree and conclude the military judge erred in failing to give appropriate instructions in this case.

The appellant testified to the following circumstances surrounding his alleged wrongful possession of drugs as charged above. He went to a party in Pemberton, New Jersey, in the early afternoon of October 3, 1978, with a fellow airman named Daniel Gerson. He dropped Gerson off at a girl's house on the way to the party. Gerson stated he would be at the party later. Appellant went to the party and met his own girlfriend.

Around 7:30 or 8:00 o'clock that night, as the party progressed, Daniel Gerson approached the appellant and asked if he could borrow appellant's car to get some beer. The appellant agreed. He then rejoined his girlfriend in another room at the party and continued drinking until 11:30 p.m. After the party, he decided to return home to McGuire Air Force Base.

After locating his car, appellant drove to McGuire Air Force Base. He removed his black gym or traveling bag from his car and proceeded to his room to shower and to go to bed. His roommate, Reginald Still, was there trying to sleep. He opened his bag and exclaimed to his roommate "Jeez, Reggie, look at this." He saw one large plastic bag of marijuana and several other small plastic bags among his toiletries in the black bag. The appellant testified that he panicked. He immediately replaced the materials in the bag and, grabbing the bag, he headed for the parking lot and his car. The appellant reentered his car and began to drive to Gate 5. En route he was stopped for speeding by the military police.

The police officer requested identification from the appellant and registration papers for his vehicle. While the appellant was searching for these papers, the police officer noticed two partially burned marijuana cigarettes in the car's ash tray. The police officer removed appellant from the car and arrested him for suspected possession of marijuana. He searched the appellant and found a clear plastic baggie of marihuana in his jacket pocket. After receiving appellant's consent to search, the black bag was opened; quantities of marihuana, LSD and methamphetamine were found in the black gym bag. The next day, a quantity of LSD was found by the police in appellant's wallet.

The appellant testified that he did not know that any drugs were in this black gym bag until he opened it in his room. When he examined it for the first time, he realized it contained marijuana and other drugs in sizeable amounts. He stated that he feared for his safety from the drugs' true owners and the probable reaction of military police. Remembering Daniel Gerson alone had access to the car, he decided to return to the party with these materials to hand them over to Gerson or anybody else at the party who owned the drugs. He testified that he did not own the jacket in which the bag of marihuana was found, nor did he know how the marihuana got there. He further denied knowledge about the LSD in his wallet or the marihuana cigarettes in his ash tray. The first, he suggested, was planted by police after his arrest, and the second, he assumed, was smoked by Gerson.

The military judge at appellant's trial refused to give an instruction requested by the defense which stated in part:

If you find that the accused was merely returning items in evidence that he believed belonged to another individual and claimed no right of ownership in those items you must acquit the accused as to those items.

He did give the following instructions:

In connection with the offenses alleging wrongful possession of marihuana—Spec-

ification 1 of Charge I—and dangerous drugs—Specification 1 of Charge II—lysergic acid diethylamide; and Specification 2 of Charge II—methamphetamine, the court is advised that the possession of marihuana and dangerous drugs may be inferred to be wrongful unless the contrary appears. A person's possession of the drug is not wrongful when the drug has been duly prescribed for him by a physician and the prescription has not been obtained by fraud or when he possesses it in the performance of his duties. Moreover, the military judge instructed the members as to the requirement of knowledge and the effect of a mistake of fact.

██ A military accused has the right to a fair trial in accordance with the Uniform Code of Military Justice. Article 51, UCMJ, 10 U.S.C. § 851, insures the military accused that the members of his court-martial will be properly instructed by a military judge as to the elements of the offenses with which he is charged. It is incumbent upon the military judge to evaluate the evidence of record and instruct "on the element of the offenses raised by the evidence as well as potential defenses and other questions of law." *See United States v. Graves*, 1 M.J. 50, 53 (C.M.A. 1975); *see also* para. 73*a*, Manual for Courts-Martial, United States, 1969 (Revised edition). "If either counsel submits proposed instructions or requests instructions on any matter, the military judge ... should provide instructions on the matter if it is an issue and has not been adequately covered elsewhere in his instructions." Para. 73*d, Manual, supra*. It is to this responsibility of the military judge that we must turn our attention.

██ The first question facing this Court is whether the specific intent of "wrongfulness" is a required element of proof for the Government in the prosecution of the appellant for these offenses. *See United States v. Thompson*, 21 U.S.C.M.A. 526, 528, 45 C.M.R. 300, 302 (1972). The language of all three possession specifications drafted by prosecutorial authorities includes the allegation that appellant "wrongfully" had in his possession or possessed certain drugs.

Moreover, as indicated above, the military judge did give an instruction on wrongfulness for all three specifications. Finally, trial counsel did not object to "wrongfulness" being considered as an element of proof as to these three specifications.

A problem arises, however, in the nature of the charges used by the Government to prosecute these offenses. The marihuana possession offense was charged under the General Article as a service disorder in a violation of Article 134, *supra*. Paragraph 213*b*, Manual, *supra*, indicates clearly that the prohibited drug possession under this codal article must "wrongful." Nonetheless, the possession of LSD and methamphetamine were charged as violations of a lawful general regulation under Article 92, *supra*. The Manual indicates that no such specific intent is required for prosecution under this Article unless it is additionally required by the regulation alleged to have been violated. *See United States v. West*, 15 U.S.C.M.A. 3, 6, 34 C.M.R. 449, 452 (1964).

Air Force Regulation 30-2 (Nov. 8, 1976), which the appellant was convicted of violating, contains in part Air Force policy on its Drug and Alcohol Abuse Control Programs. Moreover, it "provides" within this context for "prohibitions concerning drugs and ... for disciplinary actions under the UCMJ for violation of these prohibitions." A review of paragraph 4-4 of this regulation reveals a general prohibition against dangerous drugs with several exceptions listed. It does not use the word "wrongful." *See* Appendix. However, the drug abuse spoken of in this regulation is defined in paragraph 4-2*e* as:

The illegal, wrongful, or improper use of any narcotic substance, marihuana, or dangerous drug; or the illegal or wrongful possession, transfer or sale of same.

*See* para. 4-2*f*. Accordingly, we agree with the convening authority and the military judge in this case that the possession of dangerous drugs prohibited by this regulation must also be "wrongful."

The second issue in this case is whether the military judge's instructions were ade-

quate to explain to the court members the meaning of "wrongful" under the facts and circumstances of this case. The record of trial indicates that the military judge did instruct the court members as to the Manual definition of wrongfulness. However, he went no further than wrongfulness as explicitly mentioned in the Manual. *See United States v. Greenwood*, 6 U.S.C.M.A. 209, 213, 19 C.M.R. 335, 339 (1955) cited with approval in *United States v. West, supra* 15 U.S.C.M.A. at 6, 34 C.M.R. at 452. The record also shows that the military judge did not believe the appellant was entitled, as a matter of law, to additional instructions on innocent possession despite evidence that he possessed planted drugs with the intention to rid himself of them by returning them to their suspected owners.

This is essentially the position of Judge Quinn in his dissenting opinion in *United States v. Thompson, supra* 21 U.S.C.M.A. at 529, 45 C.M.R. at 303. The majority of the Court, however, viewed this question differently. They observed that, during Thompson's providency inquiry, he had informed the judge "that his purpose in removing the [drugs]. . . was to 'get rid of it.' "[1] The majority also noted that the accused, testifying in extenuation and mitigation, reiterated this purpose and added:

> "I thought about putting it in Specialist Vandenbloom's [who allegedly had placed the drug in the accused's cubicle] room, sit it on his bed and just leave it. Just take it out and get rid of it. I means just throw it away."

In a frank assessment of this testimony, the majority ruled:

1. The majority also observed that Jones, a co-accused of Thompson, represented to this same trial judge:
   > "we were going to turn it in, either that or dump it on the guy's bed that put in in the wall there cause we didn't want to have anything to do with it."

   *United States v. Thompson*, 21 U.S.C.M.A. 526, 527, 45 C.M.R. 300, 301 (1972).

2. The majority of the Court noted later in its *Thompson* opinion *supra* at 528, 45 C.M.R. at 302:
   > If one believes his statement, the accused explained his possession of the heroin in question in a manner consistent only with his

Thompson's explanation during the plea proceedings and in mitigation and extenuation that the heroin had been secreted in his room without his knowledge and that his purpose in removing it was to rid himself of it conflicts with his plea of guilty to its wrongful possession. *Id.* at 527, 45 C.M.R. at 301. Following this precedent,[2] we must also rule that the military judge erred when he refused to tailor his wrongfulness instruction in light of the appellant's testimony on innocent possession. In view of this case law and the facts of appellant's case, the judge should have instructed the members as to this issue on his own initiative. *See United States v. Sawyer*, 4 M.J. 64 (C.M.A. 1977); *United States v. Graves, supra.*

Finally, we must determine the extent to which the appellant was prejudiced by the military judge's failure to give adequate instructions to the court members. Article 59(a), UCMJ, 10 U.S.C. § 859(a). *See United States v. Salley*, 9 M.J. 189, 193 (C.M.A. 1980). As originally instructed, the court members could have found the appellant guilty if they disbelieved his story that the drugs were planted in his black gym bag. However, they could also have found him guilty if they believed his story of discovering these drugs and intending to rid himself of them by immediately returning them to their suspected owner. Since this Court cannot state on which theory of criminal liability the members relied,[3] the failure to give the additional instruction in this case must be considered prejudicial to the appellant.

innocence. *United States v. West*, [15 U.S.C.M.A. 3, 6, 34 C.M.R. 449, 452 (1964)].
*See United States v. Kaufman*, 46 C.M.R. 822 (A.C.M.R. 1972).

3. During the members' deliberations on finding, the military judge reopened the court. The president of the court asked the military judge for a ruling on whether it was "a proper defense to cite fear of what consequences might be for not returning an object, or something, back to the supposed owner." The military judge said that they had received no instruction to this effect, and they were bound by the instruction as actually given by him.

However, the appellant was also found guilty of the wrongful possession of the marihuana in his ash tray and in his jacket and the LSD in his wallet. These materials were not in the black gym bag and the appellant testified that he had no knowledge of his possession of these drugs. The military judge gave an adequate instruction on knowledge to cover the appellant's defense to these possession charges. *See United States v. Greenwood, supra.* The additional instruction on innocent possession would not be relevant to these findings of guilty, nor was its omission prejudicial to the appellant.

The decision of the United States Air Force Court of Military Review is reversed. So much of the finding of guilty of Charge I, specification 1, as exceeds a finding that the appellant possessed 8.96 grams of marihuana, is set aside. So much of the finding of guilty of Charge II, specification 1, as exceeds a finding that the appellant possessed one dosage form of LSD is set aside. The finding of guilty of Charge II, specification 2, is set aside. The sentence is set aside. The record of trial is returned to the Judge Advocate General of the Air Force. A rehearing may be ordered as to the specification or portions thereof so set aside and the sentence.

APPENDIX

Air Force Regulation 30-2 (Nov. 8, 1976) states:

SECTION B—PROHIBITIONS AND PENALTIES

4-4. Use, Possession Sale, Transfer, and Introduction of Drugs. Air Force members and civilians who are subject to the Uniform Code of Military Justice (UCMJ) will not use, possess, sell, transfer, or introduce into a military unit, base, station, post, ship or aircraft any dangerous drugs as specified in paragraph 4-2b. Violations of these prohibitions are chargeable under the UCMJ, Article 92, for failure to obey a lawful general regulation. The use, possession, sale, transfer or introduction into a military unit, base, station, post, ship or aircraft of marijuana or any habit-forming narcotic drug by an Air Force member or civilian subject to the UCMJ is punishable under Article 134, UCMJ. Drug abuse, as defined by paragraph 4 2e, by any DAF civilian employee not subject to the UCMJ subjects such employee to disciplinary action pursuant to AFR 40-750, in addition to any civilian criminal prosecution which may apply. Members of the Air Force Reserve who are not subject to the UCMJ and who violate the prohibitions in this pararaph [sic] are, nevertheless, subject to applicable Air Force administrative sanctions as well as to civilian criminal penalties. *The prohibitions above do not apply to*:

a. The use, possession, or introduction onto an Air Force installation or other Government property of drugs (paragraph 4-2) *prescribed by a physician,* if such prescription was not obtained by fraud or misrepresentation.

b. Any act performed *within the proper scope of official duties.*

c. Any drug (paragraph 4-2) contained in a substance acquired:

(1) *Within the United States by an over-the-counter, nonprescription purchase* from a retail establishment maintained according to applicable local laws.

(2) *By legal purchase* from an exchange [ship]'s store, or other merchandizing facility operated by the Government or any of its instrumentalities.

(Emphasis added.)

EVERETT, Chief Judge (concurring):

The defense counsel clearly raised with the military judge the issue of whether the appellant's possession was "wrongful," since there was evidence Rowe was returning to the supposed owner a substantial amount of drugs that he had found in his black gym bag. To accomplish this purpose, he had started to drive from McGuire Air Force Base to Pemberton, New Jersey, where earlier that evening he had been attending a party when the drugs were placed in the bag. Did the majority opinion in *United States v. Thompson,* 21 U.S.C.M.A. 526, 45 C.M.R. 300 (1972), have in mind such a situation when it held that the accused in that case had adduced evidence inconsistent

with a plea of guilty to wrongful possession of heroin?

There the Court remarked:

Criminal liability cannot be imposed for possession of a forbidden substance that is truly planted evidence, when the accused's sole purpose in controlling it for a few moments is to rid himself of it.

*Id.* at 528, 45 C.M.R. at 302.

Since Thompson and his co-accused, Jones, had testified that their purpose was to "get rid of" the heroin which they had found in a wall panel of their room, the military judge—who had taken an unduly restrictive view that the possession was wrongful unless the accused intended to turn in the drug to the authorities—had erred in accepting the plea of guilty. The full scope of *Thompson* is difficult to discern; but the majority opinion adverted specifically to testimony that the means which had been considered to rid themselves of the heroin included "dump[ing] it on the guy's bed that put in the wall there" and "putting it in Specialist Vandenbloom's [who allegedly had placed the drug in accused's cubicle] room, sit it on his bed and just leave it." *Id.* at 527, 45 C.M.R. at 301. Judge Quinn's dissent argued that "[p]ossession for the purpose of transfer to an individual known to have no lawful right to receive it, as the accused concededly knew Vandenbloom had no right, is wrongful possession." *Id.* at 529, 45 C.M.R. at 303. He also emphasized that the accused there were planning to retain 20 vials of heroin out of the 200 which they claimed had been planted in their room.

In light of Judge Quinn's dissent, which highlights his disagreement with the majority opinion,[1] I must conclude that the majority in *Thompson* intended to rule that possession of contraband is not "wrongful" when the contraband has come into someone's possession without his knowledge or consent and he only attempts to return it to its owner. I have little sympathy for such a rule, which in the case at bar condones the return of drugs to a person who, as appel-

lant was fully aware, would then proceed to use or distribute them. However, our Court has not been supplied with any precedent from other jurisdictions—if any there be—which announces a different rule in such instances. Instead, the argument before us centered on the correct interpretation of *Thompson*. Under these circumstances, I reluctantly concur in the principal opinion herein.

COOK, Judge (dissenting):

*United States v. Thompson.* 21 U.S.C. M.A. 526, 45 C.M.R. 300 (1972), involved an assertion by the accused during the providency inquiry that he intended "to 'get rid of it'" in reference to the contraband in question. A companion of the accused "represented to the judge that 'we were going to turn it in, either that or dump it on the guy's bed that put in in the wall there cause we didn't want to have anything to do with it.'" *Id.* at 527, 45 C.M.R. at 301. As I view Judge Quinn's dissent, it is in disagreement with the majority as to the interpretation of the quoted comments rather than a rule of law that an intent to return contraband is a defense when the intended transferee has no legal right of possession. *Id.* at 528, 45 C.M.R. at 302. He viewed them as an intent to return the contraband to the previous owner, while the majority interpreted the comments as an assertion that the contraband was to be taken out of the stream of illegal possession. Indeed, the transfer of contraband to one whose possession would be illegal would constitute the transferor an aider and abettor of the illegal possession and, therefore, liable as a principal. Article 77, Uniform Code of Military Justice, 10 U.S.C. § 877; para. 156, Manual for Courts-Martial, United States, 1969 (Revised edition). Furthermore, the transfer itself would be a violation of the regulation in question or Article 134, UCMJ, 10 U.S.C. § 934. Thus, possession for this purpose would be wrongful. Accordingly, I would affirm the decision of the United States Air Force Court of Military Review.

---

1. Absent the dissent, I would be tempted to construe the majority opinion more narrowly, so that it only exonerated possession for the

purpose of delivering the contraband to lawful authorities or destroying it.