**UNITED STATES, Appellee,**

v.

**Scott D. KUNKLE, Senior Airman U.S. Air Force, Appellant.**

No. 52,875.
ACM S26672.

U.S. Court of Military Appeals.

Jan. 12, 1987.

For Appellant: *Lieutenant Colonel Patrick C. Sweeney* (argued); *Colonel Leo L. Sergi* (on brief).

For Appellee: *Captain Marc Van Nuys* (argued); *Colonel Kenneth R. Rengert* (on brief); *Major David F. Barton.*

*Opinion of the Court*

EVERETT, Chief Judge:

Appellant was tried by a special court-martial and, pursuant to his pleas, was found guilty of wrongfully possessing methamphetamine, in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a. He was sentenced to a bad-

conduct discharge, confinement for 4 months, partial forfeitures, and reduction to E-1. After all the intermediate reviewing authorities had upheld his conviction and sentence, we granted review to consider whether appellant's guilty pleas were improvident.

We now affirm.

## I

During appellant's providence inquiry, the military judge asked him to explain his possession of methamphetamine on or about September 28, 1984, in Adelanto, California. Kunkle then stated that, as he was cleaning his house the day after he had a party, he saw it "laying underneath the kitchen table" on the floor. "From the package that it was in and my past knowledge on people doing drugs," he knew what it was. According to Kunkle, the drugs were not his roommate's " 'cause I told him I didn't allow no drugs in the house.' " Also, he had not seen anyone else using drugs at the party, and he completely disavowed having "knowledge of drugs being in the house."

In any event, he "picked it up because I didn't want it laying out in the open" and put it in his "top pocket." Furthermore, appellant explained to the military judge that "I was going to ask my roommate about it after he woke up to find out whose it was and tell him to get it out of the house." Later, he also explained that "I was going to give it to my roommate and have him give it back to the individual and tell him I didn't want him in my house no more." However, appellant told the judge that before his roommate awoke and got "out of bed the Adelanto Police Department came down and found it on my possession." The police had discovered it when Kunkle bent over to pick up something and the drug fell out of his top pocket.

Finally, during the providence inquiry, this significant exchange occurred as to appellant's possession of methamphetamine:

MJ: [I]t was there for about an hour and a half before it was discovered?

ACC: Yes, sir.

MJ: Let's turn now to the second element, that the possession was wrongful. What can you tell me about that?

ACC: Sir, I knew that I was making a mistake by picking it up and putting it in my pocket. But I wanted to find out whose it was and make sure that person wouldn't come back to the house again and that drugs were never brought back into the house again, sir.

MJ: Why at that point did you not simply throw it out, flush it down the drain, or do something else with it, to terminate your association with it?

ACC: I was just so upset of it being in the house, sir, I wanted to confront the person that brought it in, sir.

MJ: Why would your roommate have known who had done this?

ACC: Because my roommate is a civilian, sir, and some of his civilian friends were at the party, sir.

The military judge then found that appellant's guilty pleas to possessing methamphetamine were provident. He emphasized that "after the discovery became voluntary and knowing," appellant

knew that it was illegal and you made the conscious decision yourself to keep it in your possession, at least until you could talk to your roommate about it and find out some more about it. So I am satisfied from a factual standpoint that your plea of guilty is a provident plea of guilty.

## II

### A

Principally relying on our earlier decisions in *United States v. Rowe*, 11 M.J. 11 (C.M.A.1981), and *United States v. Thompson*, 21 U.S.C.M.A. 526, 45 C.M.R. 300 (1972), appellant insists that "[p]ossession [of drugs] is not wrongful if the accused possessed the drugs with the intention to ridding himself of them." He then contends that his guilty pleas to wrongful

possession of methamphetamine were improvident because his uncontested statement during the *Care* [1] inquiry was "that his possession was to rid himself of it by returning it to the owner through his roommate." According to appellant, his explanation of his possession of methamphetamine raised the possibility of a "defense of innocent possession"; so a further inquiry should have been conducted by the military judge in order to determine whether his providence answers conflicted with his guilty pleas. *Cf.* Art. 45(a), UCMJ, 10 U.S.C. § 845(a).

The Government contends, however, that as a matter of law, Kunkle's explanation of his possession of methamphetamine did not present the elements of "innocent possession," as that defense was explained in *United States v. Thompson* and *United States v. Rowe*, both *supra*. Furthermore, in its view the defense of innocent possession, insofar as applicable to controlled substances, should be expressly limited to cases where an accused gains possession of contraband without knowledge or consent and thereafter seeks to rid himself thereof either by immediately destroying it or by relinquishing it to law-enforcement authorities. To the extent *Thompson* and *Rowe* allow a broader application of the defense, the Government would have us overrule them.

In *Thompson*, the accused, who pleaded guilty to possessing heroin, told the military judge during the providence inquiry that he had been apprised "that heroin had been planted in ... [his] room." He and Jones, a co-accused, then searched and found it "concealed in a wall panel. While they were in the process of removing it, the first sergeant entered [the room] and caught them." Thompson explained to the judge that his "purpose in removing the ... [heroin] was to 'get rid of it.'" After Jones also had stated "that 'we were going to turn it in, either that or dump it on the guy's bed that put it in the wall there cause we didn't want to have anything to do with it,'" the military judge asked Thompson to clarify what had been his purpose. In his view, if appellant had "intended to turn the drug in, their possession would not be wrongful." After a recess, the accused acknowledged that his "possession [of the heroin] was wrongful" but still maintained that he and Jones were trying "to rid themselves of the" drug. 21 U.S.C.M.A. at 527, 45 C.M.R. at 301.

By a divided vote, the Court held that the accused's guilty pleas to possession of heroin were improvident. First, we observed that, if an accused pleaded guilty and then set up any matter inconsistent with his pleas, the military "judge has the duty" under Article 45 of the Code "to inquire [further] into the circumstances and, if the accused persists in his statements, to reject the plea" and proceed to trial as though he had pleaded not guilty. The Court then concluded that this should have been done, since "the accused explained his possession of the heroin in question in a manner consistent only with his innocence." Indeed, the majority of the Court was of the view that

> [c]riminal liability cannot be imposed for possession of a forbidden substance that is *truly planted* evidence, when the accused's *sole purpose in controlling it for a few moments is to rid himself of it.* The significant point was stated in *Masters v. United States,* 42 App DC 350, 356 (1914):
>
> "The word 'wrongful,' like the words 'wilful,' 'malicious,' 'fraudulent,' etc., when used in criminal statutes, implies a perverted evil mind in the doer of the act. The word 'wrongful' implies the opposite of right, a perverted evil mind in the doer of the act."

21 U.S.C.M.A. at 528, 45 C.M.R. at 302 (emphasis added).

In his dissenting opinion, Judge Quinn disagreed with the approach taken by the majority. Believing that, according to his own version of events, the accused had made clear that his intent was to return possession of the heroin to one Vanden-

---

1. 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969).

bloom who had allegedly secreted the heroin in the wall, Judge Quinn reasoned:

Possession for the purpose of transfer to an individual known to have no lawful right to receive it, as the accused concededly knew Vandenbloom had no right, is wrongful possession. Consequently, so far as appears from the accused's account of the incident at the hearing before the trial judge, the facts demonstrate his guilt of the offense and fully justified acceptance of his plea of guilty.

*Id.* at 529, 45 C.M.R. at 303.

In *Rowe*, each judge filed a separate opinion as to the availability of the defense of innocent possession. The accused had pleaded not guilty to possession of marijuana, LSD, and methamphetamine. During his trial, he had testified that he loaned his car to a friend while attending a party in Pemberton, New Jersey. Later that evening, after locating his car, he drove back to McGuire Air Force Base. He then removed his gym bag from his car and proceeded to his room to shower and go to bed. When he opened his bag, he saw a large plastic bag of marijuana and several other smaller plastic bags. According to Rowe, he panicked at that point because

he did not know that any drugs were in this black gym bag until he opened it in his room. When he examined it for the first time, he realized it contained marijuana and other drugs in sizeable amounts. *He stated that he feared for his safety from the drugs' true owners and the probable reaction of military police.* Remembering Daniel Gerson alone had access to the car, he decided to return to the party with these materials to hand them over to Gerson or anybody else at the party who owned the drugs.

So "[h]e immediately replaced the materials in the bag." 11 M.J. at 12 (emphasis added). However, before he got back to the party, the drugs were discovered in his possession when the military police stopped him for speeding as he was approaching the gate to leave the base.

The military judge denied the defense request for this instruction:

If you find that the accused was merely returning items in evidence that he believed belonged to another individual and claimed no right of ownership in those items you must acquit the accused as to those items.

*Id.* Whether the military judge was required to give such instruction was the sole issue on appeal.

Judge Fletcher, writing for the majority, stated that, if the Court followed *Thompson*, Rowe was entitled to have the members instructed on innocent possession, because of "evidence that he possessed planted drugs with the intention to rid himself of them by returning them to their suspected owners." *Id.* at 14. In a somewhat reluctant concurrence, I observed:

The full scope of *Thompson* is difficult to discern.

\*   \*   \*   \*   \*   \*

[However], [i]n light of Judge Quinn's dissent, which highlights his disagreement with the majority opinion, I must conclude that the majority in *Thompson* intended to rule that possession of contraband is not "wrongful" when the contraband has come into someone's possession without his knowledge or consent and he only attempts to return it to its owner. I have little sympathy for such a rule, which in the case at bar condones the return of drugs to a person who, as appellant was fully aware, would then proceed to use or distribute them. However, our Court has not been supplied with any precedent from other jurisdictions—if any there be—which announces a different rule in such instances. Instead, the argument before us centered on the correct interpretation of *Thompson*. Under these circumstances, I reluctantly concur in the principal opinion herein.

*Id.* at 16 (footnote omitted).

Judge Cook, dissenting in *Rowe*, agreed with the views of Judge Quinn in his *Thompson* dissent and stated:

[T]he transfer of contraband to one whose possession would be illegal would

constitute the transferor an aider and abettor of the illegal possession and, therefore, liable as a principal. Article 77, Uniform Code of Military Justice, 10 U.S.C. § 877; para. 156, Manual for Courts-Martial, United States, 1969 (Revised edition). Furthermore, the transfer itself would be a violation of the regulation in question or Article 134, UCMJ, 10 U.S.C. § 934. Thus, possession for this purpose would be wrongful. *Id.* at 16.

In any event, the majority holdings in both *Thompson* and *Rowe* were to the effect that an accused's possession of drugs is not "wrongful" if they came into his possession without his knowledge and if, upon becoming aware thereof, he took immediate steps to rid himself of the contraband by redelivery to the owner. In both cases, it was assumed by the Court that the drugs had been "planted" or left in the accused's possession without his knowledge and that, upon discovering them, he had taken immediate and affirmative steps to return them to the person who had left them in his possession. Indeed, in *Thompson* the Court emphasized that the drugs were "truly planted evidence" and that "the accused's sole" *ephemeral* possession of the drugs was "to rid himself of" them. 21 U.S.C.M.A. at 528, 45 C.M.R. at 302. Also, as the Court indicated in *Rowe*, the accused "immediately" attempted to leave the base to take the drugs back to the owner as soon as he realized what he had in his bag. 11 M.J. at 12.

Accordingly, the present case is distinguishable from *Thompson* and *Rowe*. The drugs were not "truly planted evidence," for they had been left in open view in Kunkle's apartment during a party. Morever, appellant admitted that he had possession of the drugs—not for only a "few moments," but for one and one-half hours—and that, even during this time, he did absolutely nothing to dispossess himself of the drugs. Although he testified that he was going to give them to his roommate who was sleeping in the apartment, he made no attempt to do so. Instead, he began to exercise full dominion over the drugs by putting them in his top pocket. From every indication, Kunkle planned to retain the drugs himself until the police discovered them on his person. Under these circumstances, his possession was not "innocent" under the *Thompson-Rowe* doctrine.

B

■ Appellate Government counsel urge that we go beyond the facts of this case; overrule *Thompson* and *Rowe;* and hold that, even if contraband has come into an accused's momentary possession without his knowledge or invitation, that possession is wrongful unless he intends to deliver the contraband to law-enforcement agents or to destroy it. In support of this position, they have called our attention to *Stewart v. United States,* 439 A.2d 461 (D.C. App. 1981). There, in affirming a conviction for drug possession, the appellate court explained that, under its case law, "the defense of innocent possession has two elements: (1) possession without criminal intent, and (2) intent to take the item(s) to the police as soon as possible." *Id.* at 463. Therefore, the defendant's intent to turn over to his supervisor or to place in the lost and found a bag of drugs he had discovered did not comply with the requirements for "innocent possession."

*Stewart* does not deal directly with the lawfulness of possession accompanied by an intent to destroy the contraband. However, such possession would also seem "innocent," since the intended destruction would protect others from potential harm due to the drugs. Certainly, it conforms more with the policy of the prohibition against drugs for a person to take possession of drugs in order to destroy them than for him to leave them where they might fall into the hands of a user. *Cf. Carey v. United States,* 377 A.2d 40, 43 (D.C.App. 1977); *Hines v. United States,* 326 A.2d 247 (D.C.App.1974); *People v. LaPella,* 272 N.Y. 81, 4 N.E.2d 943 (1936). While we would prefer that illegal drugs be turned over to the police, it would be unfair to

require this in all cases. The accused has not created the situation which led to his having possession of the drugs; but if he delivers the contraband to the police, he may find himself under suspicion, *cf. United States v. Churnovic*, 22 M.J. 401 (C.M.A.1986), or he may induce reprisals by the owner of the drugs.[2]

If an accused has unwittingly come into possession of drugs and he does not either destroy them immediately or deliver them to the police, however, but instead returns them to the owner, he cannot excuse or justify his possession "as stemming from an affirmative effort to aid and enhance social policy underlying law enforcement." *See Stewart v. United States, supra* at 463, quoting from 326 A.2d at 248. The contraband has been made available again for distribution or use by the owners. For this reason, the majority view in *Thompson* and in *Rowe* was criticized severely by the dissenting opinions in those cases and more recently has been described as "illogical" by the Air Force Court of Military Review. *See United States v. Neely*, 15 M.J. 505, 508 (1982), *pet. denied*, 16 M.J. 135 (1983). Moreover, the drafters of the Manual for Courts-Martial (1984) stated specifically that the definition of "wrongful" with regard to possession of controlled substances in violation of Article 112a "is not intended to perpetuate the holding" in *Rowe*. *See* Drafters' Analysis, App. 21, Part IV, para. 37(5), Manual for Courts-Martial, United States, 1984.

Of course, usually the failure to assist in law enforcement is not itself punishable. A bystander who simply watches a crime being committed cannot be convicted of that crime. However, the return of drugs to an owner involves positive action—even though that action has been occasioned by the conduct of another person. This redelivery can be viewed as interference with the goals of law enforcement. No "altruis-

tic motive" is present to serve as a justification or excuse.

Appellant would undoubtedly reply that return of contraband to the original owner is nothing more than restoration of the *status quo ante*—the situation that existed before the drugs were received. This response is not satisfactory when, as in this case, the earlier situation was itself fraught with peril to the public. Thus, if a gunman drops his pistol and someone picks it up and hands it back to him, this conduct is not excusable or justifiable on the ground that the gunman had possessed the weapon previously.

■ A very limited exception should be noted. If a person inadvertently comes into possession of contraband and reasonably believes that he would be exposing himself to immediate physical danger unless he returned it to the prior possessor, then his possession and return of the property are innocent. For example, if someone is handed a package to hold momentarily for an acquaintance and then is told that the package contains illegal drugs, he may anticipate that he will be subject to severe reprisals from the owner if he destroys the package or delivers it to the police. The only alternative which is not life-endangering may reasonably appear to be redelivery of the package to the prior possessor immediately upon learning its contents. Under these very unusual circumstances, criminal liability would not exist, because the accused can properly defend on the grounds of necessity to protect himself against severe physical harm.[3]

We hesitate to overrule our precedents, for *stare decisis* promotes predictability and consistency. *Cf. Vasquez v. Hillery*, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986). However, the *Thompson-Rowe* doctrine has been severely questioned and criticized from the outset; has little support in prior or subsequent judicial prece-

---

2. Technically, there are no ownership rights in contraband.

3. Similarly, if an undercover law-enforcement agent comes into possession of contraband but

delivers or returns it to someone else in order to conceal his true status and mission and to protect himself from retaliation, he has not committed a crime.

dent; has no supporting rationale; and has led to anomalous results. Under these circumstances, adherence to precedent "bows to the lessons of experience and the force of better reasoning, recognizing that the process of trial and error, so fruitful in the physical sciences, is appropriate also in the judicial function." *See Burnet v. Colorado Oil and Gas Co.*, 285 U.S. 393, 407–08, 52 S.Ct. 443, 447–48, 76 L.Ed. 815 (1932) (Brandeis, J., dissenting) (footnote omitted). Accordingly, to the extent they hold that inadvertent possession of contra-band is innocent if accompanied by an intent to return or redeliver it immediately to the prior possessor, *Thompson* and *Rowe* are overruled.[4]

### III

The decision of the United States Air Force Court of Military Review is affirmed.

Judge COX concurs.

Judge SULLIVAN did not participate.

---

**4.** We need not decide now whether such redelivery would constitute wrongful distribution of the drugs.