UNITED STATES, Appellee

v.

MARRINE JACKSON, Private, U. S. Army, Appellant

1 USCMA 190, 2 CMR 96

No. 141

Decided February 26, 1952

Col. M. W. Ludington, USA, for Appellant.
Lt. Col. Paul J. Leahy, USA, for Appellee.

Opinion of the Court

Robert E. Quinn, Chief Judge:

Petitioner pleaded not guilty to but was found guilty of absence without leave from his organization in Korea, from January 1, 1951, to March 7, 1951. On May 7, 1951, he was sentenced to a dishonorable discharge, total forfeiture of pay, and confinement at hard labor for ten years. Army review authorities upheld the findings and sentence. We

granted petition for review to consider the question of whether petitioner's absence was terminated by a temporary return to military control during the period of absence for which he was convicted.

No question is raised concerning the sufficiency of the evidence to establish guilt. The government's case was complete, and petitioner admitted the absence without leave while testifying as a witness in his own behalf. No previous convictions were proven at the trial. However, there does appear in the allied papers an extract copy of petitioner's service record which shows that he was tried and convicted by an army summary court-martial at Taegu, Korea, on January 15, 1951. The offenses were relatively minor violations of Article of War 96, 10 USC § 1568, and petitioner was sentenced to forfeit $50.00 of his pay. This record discloses that petitioner was tried under his correct name, service number, and organization. The question is whether this temporary exercise of army jurisdiction constituted a legal termination of the absence without leave status which originally commenced on January 1, 1951. It does not appear in the record, but we may assume, that petitioner did not disclose to the Taegu court his true status as an absentee.

We are met at the outset with the government contention that the Court may not properly notice this record of summary court-martial trial, since it was not introduced in evidence, was not adverted to at the trial, and is therefore not a part of the record before this Court. We may note that there is authority in both service and civilian cases for our taking judicial notice of the record of trial in another court-martial. See United States v. Barnes, 8 BR–JC 219, 262; United States v. Montez, CM 346677, 1 CMR 178; United States v. Nelson, CM 347000, 1 CMR 169; National Fire Insurance Company v. Thompson, 281 US 331, 74 L ed 881, 50 S Ct 288; Funk v. Commissioner, 163 F2d 796, 800 (CA 3rd Cir). We are not, however, to be construed as deciding this issue. We shall assume, for the purpose of deciding whether petitioner's unauthorized absence was legally terminated, that we do have before us the record of summary court-martial trial at Taegu.

Paragraph 146a of the Manual for Courts-Martial, 1949, provides that the condition of absence without leave, having once been shown to exist, may be presumed to have continued in the absence of evidence to the contrary, until the absentee's return to military control. The problem then, is, what is meant by "return to military control." The services have consistently held that return by the absentee to his duty station is not necessary to terminate an unauthorized absence status, and that termination is effected by any proper exercise of military control over the absentee. United States v. Arthur, 54 BR 159; United States v. Lofton, 18 BR(ETO) 139; see Army Regulation 600–120, paragraph 8, of May 8, 1951. The services also agree that an absentee's casual presence at a military installation, unknown to competent authority and for purposes primarily his own, does not end his unauthorized absence. United States v. Keller, 60 BR 335; United States v. Matheron, 53 BR 293. Further, even known presence at a military installation will not constitute termination where the absentee, by design and misrepresentation, conceals his identity or duty status. United States v. Cox, 33 BR 169. These rules seem sensible to us.

This case poses a situation not covered by the rules noted above. Competent military authority did exercise control over petitioner, and he did not conceal his identity or duty station. However, he failed to disclose to the authorities his status as an absentee. Solution of this problem must, we think, depend to some extent upon practical considerations.

The summary court-martial by which petitioner was convicted was convened by the commanding officer of the Taegu Military Command at Taegu, Korea. Petitioner was attached to an infantry regiment of the Seventh Infantry Division which, at the time of trial, was located a considerable distance from

Taegu. Normally, a soldier will be returned to his own command for trial when he commits offenses outside the jurisdiction of that command. However, during World War II and presently in Korea, the army has established summary courts-martial in large cities in those areas where there are large troop concentrations. The reason for this is to prosecute minor offenders "on the spot", for military convenience and to insure prompt and effective enforcement of military discipline. It was this type of court before which petitioner was tried. Because of its jurisdiction and procedure, this court would not ordinarily take the time to obtain from the parent organization information on the duty status of every soldier which comes before it. Thus, unless an unauthorized absentee makes it known to the court, they would remain ignorant of his status. To rule that this exercise of transitory military jurisdiction over a soldier would terminate an unauthorized duty status would, we think, result in unduly restricting the effectiveness of these courts. Referral to every soldier's parent organization in order to determine his status would make difficult if not impossible the prompt and effective disciplinary action on minor offenses for which these courts exist. Transient soldiers who commit minor offenses would have to be held for extended periods of time while requests for information as to duty status traveled through customary channels. Such a view is in no way unfair to the soldier concerned. This petitioner indicated no intention to return to military control. His return was involuntary and, after the trial by summary court-martial, he remained absent for a further period of some two months.

We are not to be construed as holding that no exercise of military control over an unauthorized absentee can result in a termination of the absence. If the absentee discloses his status so that the military authorities have full knowledge of all the facts, they could not, with propriety, contend that the absence was not legally terminated. Further, we think that if the authorities concerned could, by the use of reasonable diligence, obtain knowledge of the soldier's true status, the same result should obtain. Thus, where an absentee is apprehended by his parent organization, tried for some minor offenses, then released, we think it proper to place the burden on that organization to know or to ascertain his duty status. Here there was neither actual knowledge nor reasonable opportunity to obtain such knowledge.

The temporary military control exercised in this case did not operate to terminate the unauthorized absence. Accordingly, the decision of the board of review is affirmed.

Judges LATIMER and BROSMAN concur.