UNITED STATES, Appellant

v

MURAT ACEMOGLU, Captain, U. S. Army, Appellee

21 USCMA 561, 45 CMR 335

Captain *Richard A. Karre* argued the cause for Appellant, United States. With him on the brief were *Lieutenant Colonel Ronald M. Holdaway* and *Captain Glenn R. Bonard*.

Captain *James K. Stewart* argued the cause for Appellee, Accused. With him on the brief were *Colonel Arnold I. Melnick* and *Captain Terrence Ahern*.

## Opinion of the Court

DARDEN, Chief Judge:

This case is here on certificate from the Judge Advocate General, United States Army, inquiring whether the Court of Military Review was correct in holding the accused's plea of guilty to absence without leave to be improvident.[1]

During the plea proceedings, it was stipulated that the accused, then on orders to Vietnam, absented himself without leave on April 9, 1969, and remained so absent until he surrendered himself at the American Embassy, Ottawa, Canada, on December 8, 1970.

The Court of Military Review found the accused's plea improvident on two bases. Without detailing the evidence, it found merit in the accused's contentions that his responses during the plea inquiry indicated he was not mentally responsible at the inception of his absence and that he had returned to military control at the American Embassy during May 1969. We disagree.

As required by United States v Care, 18 USCMA 535, 40 CMR 247 (1969), the military judge personally addressed the accused concerning the circumstances of his absence. Accused declared that he did not realize what he was doing, "was mentally confused," could not control himself, and did the wrong thing. Commendably, the military judge made further inquiry into accused's condition.

Further questioning revealed that accused considered his absence was entirely the result of "bad judgment . . . due, partially, to the fact that I was new in the United States, and didn't know rules or regulations and I —it was a lack of experience."[2] The colloquy ended with accused stating that he had been no more than confused at the time of his absence.

A plea of guilty cannot stand in face of statements by the accused inconsistent with his guilt. United States v Welker, 8 USCMA 647, 25 CMR 151 (1958); United States v Thompson, 13 USCMA 395, 32 CMR 395 (1962); United States v Stewart, 19 USCMA 58, 41 CMR 58 (1969); United States v Vance, 17 USCMA 444, 38 CMR 242 (1968). In United States v Trede, 2 USCMA 581, 10 CMR 79 (1953), and again in United States v Batts, 19 USCMA 521, 42 CMR 123 (1970), this Court held that evidence of lack of mental responsibility would conflict with a plea of guilty and render it improvident. In *Trede*, the evidence was found not to establish any basis for accused's appellate claim of improvidence, while in *Batts*, evidence that the accused was actively phychotic at the time of his absence was held to require his plea to be set aside.

In the present case, we are unable to conclude from accused's responses

---

[1] CM 426937.
[2] Accused is a Turkish citizen and a resident alien.

during the guilty plea inquiry that █ any issue of mental responsibility was raised. While the accused initially stated to the military judge that his absence resulted from mental confusion, the answer was quickly clarified. Further interrogation established that the accused meant no more than that his judgment was faulty and that he was confused concerning his military obligations. Accordingly, we find no basis for a holding of improvidence premised on the accused's mental condition at the time of the offense. United States v Trede, supra.

During the plea inquiry, the accused also stated that, in May 1969, he realized the error of his ways and, in an attempt to correct his action, visited the American Embassy at Ottawa, Canada. He informed "them that I was absent without leave, and I asked them how I could return back, and at that time, they advised me that I should call the military attaché and at that time, they connected me to the attaché. I talked with him and he advised me, really, that I should make a return to the military when I was ready."

Relying on United States v Self, 35 CMR 557 (ABR 1965), and United States v Kitchen, 5 USCMA 541, 18 CMR 165 (1955), accused contends that, in his visit to the Embassy, he made a bona fide offer to submit to military control, with the intent to return to duty. As this consisted in reporting in person to the military attaché, an officer authorized under the Uniform Code of Military Justice to place him under apprehension, and informing the attaché of his status, he believes that his surrender in May 1969 is effectively made out.

Pretermitting consideration of the authority of a military attaché in a United States embassy to █ apprehend a resident alien for an offense against the United States, we discern in this record no basis for the conclusion that the accused reported in person to the attaché or submitted to his control in May 1969.

The accused stated that he visited the Embassy, made inquiries concerning his absence, was advised "that I should *call* the military attaché and at that time, they *connected* me to the attaché." (Emphasis supplied.) Accused talked with him and "he advised me, really, that I should make a return to the military when I was ready."

Elsewhere, the accused noted that he discussed the problem with the attaché on two occasions, who advised him to "submit myself as soon as possible and I promised him I would make the return."

Accused's statements establish that he did not submit himself to military control on either of these occasions. He merely sought advice concerning his status telephonically, was correctly informed that he should surrender, and promised to do so. As alleged and found, he eventually surrendered at the Embassy on December 8, 1970, but nothing in his responses tends to show more than an inchoate desire to return at an earlier date.

In United States v Kitchen, supra, the accused allegedly reported to a staff sergeant in a recruiting office, informed him that he was absent without leave, and was told to go home until arrangements could be made for his transportation back to his organization. This was held to be an express submission to military control. In United States v Self, supra, the accused reported to his former superior warrant officer at Fort Riley, Kansas, expressed a desire to return to work at his old job, requested that orders transferring him elsewhere be revoked, and asked that he be reassigned to Fort Riley. His superior told him that he was unable to do this and advised him to surrender as soon as possible. Despite these circumstances, the board of review found that the accused had not surrendered, for his proposed return to military control was conditional. Neither of these cases is controlling here.

In our opinion, Captain Acemoglu visited the Embassy in May 1969 only for the purpose of seeking advice concerning his situation. This casual presence for purposes of his own, and without intent to subject himself to military control, would be insufficient to constitute a surrender at a military installation. United States v Jackson, 1 USCMA 190, 2 CMR 96 (1952). His conversations with a military attaché at a United States embassy do not have any greater effect and do not..

conflict with his plea of guilty to an absence extending to December 8, 1970.

The certified question is answered in the negative, and the decision of the Court of Military Review is reversed. The record of trial is returned to the Judge Advocate General of the Army for action consistent with this opinion.

Judges QUINN and DUNCAN concur.