**UNITED STATES**

v.

**James Franklin RAYLE, 299 50 3816, Seaman (E-3) U. S. Navy.**

**NCM 78 0646.**

U. S. Navy Court of Military Review.

Sentence Adjudged 15 Nov. 1977.

Decided 24 Jan. 1979.

**3.** *Id.*

LT Michael F. Fink, JAGC, USNR, Appellate Defense Counsel.

LT Sander Mednick, JAGC, USNR, Appellate Government Counsel.

Before CEDARBURG, GREGORY and GLADIS, JJ.

GREGORY, Judge:

Appellant stands convicted of an unauthorized absence from 6 October 1975 to 9 August 1977, in violation of Article 86, Uniform Code of Military Justice, 10 U.S.C. § 886. The sentence approved on review below provides for a bad-conduct discharge and reduction to pay grade E–1.

The question presented by this case is whether appellant's unauthorized absence was terminated on 17 October 1975, when he went to the Naval Regional Medical Center, Portsmouth, Virginia, and talked to two Navy doctors. We believe that appellant's visit to the Medical Center did constitute a return to military control.

Appellant had just completed recruit training and had orders to report to USS LAMOURE COUNTY (LST–1194) in Norfolk, Virginia, no later than 2400, 5 October 1975. He did not report as ordered and remained at his home in Findlay, Ohio. He finally went to Norfolk on 16 October 1975; however, he was still reluctant to report in. He ended up ingesting sleeping pills, telephoning a suicide reaction center, and being taken to Norfolk General Hospital where his stomach was pumped. At the hospital, he was asked if he would like to talk to a priest, and he answered affirmatively. A Father Quentin Lister arrived, spoke with appellant, and took him to Sacred Heart Rectory where appellant spent the night.

On 17 October 1975, Father Lister took appellant to the Naval Regional Medical Center because "it was [his] understanding that [appellant] would be able to 'report in' there, as well as at the Norfolk Naval Base." See Defense Exhibit A. Father Lister and appellant spoke first to two Navy chaplains, and then were taken to talk to a Navy doctor. Appellant testified that he told this doctor his name, that he was late reporting to his ship, that he was supposed to have reported in on 5 October, that he wanted to turn himself in, and that he had taken an overdose of pills. (R. 19). Appellant indicated that the doctor had little to say, "had his cover on" (R. 19), and appeared to be "in a hurry to go someplace." (R. 24).

This first doctor took appellant down the hall to talk to a Navy psychiatrist. Appellant stated that he told this second officer his name, that he was absent from his ship since 5 October, and that he was turning himself in. (R. 19). The psychiatrist discussed with appellant his reasons for not reporting in and for taking the pills. The psychiatrist then told appellant that he had to leave and for appellant to return the following Monday. Appellant indicated that he asked the psychiatrist where he should go and was told to go back to the Sacred Heart Rectory until Monday. (R. 19–20). When appellant left the psychiatrist's office, Father Lister had departed.

Appellant picked up his service record from on top of his sea bag in a passageway and eventually returned to Findlay, Ohio. He was absent an additional 22 months.

▇ The termination of an unauthorized absence is effected by any proper exercise of military control over the absentee. *United States v. Jackson*, 1 U.S.C.M.A. 190, 2 C.M.R. 96 (1952). An absence is also constructively terminated when an absentee presents himself to military authorities with full intention of returning to duty, even when no control is exercised by military authorities, *United States v. Reeder*, 22 U.S.C.M.A. 11, 46 C.M.R. 11 (1972), the rationale being that, ". . . it would be manifestly unjust not to terminate an unauthorized absence where the accused did everything within his power to surrender only to have the military authority refuse to receive him or exercise control over him." *United States v. Self*, 35 C.M.R. 557, 560 (A.B.R.1965). *Cf. United States v. Lanphear*, 23 U.S.C.M.A. 338, 49 C.M.R. 742 (1975).

▇ Appellant's presence at the Naval Regional Medical Center cannot be viewed as "casual." *See United States v. Jackson, supra*, at 192, 2 C.M.R. at 98. Appellant made known fully his identity and unauthorized absence status. Appellant's testimony that he went to Portsmouth to surrender himself and that he made this fact known to the two Navy doctors is essentially unrebutted. That appellant wanted to surrender is also supported by the stipulated testimony of Father Lister. *See* Defense Exhibit A.

The two Navy doctors were authorized to take custody of appellant and to terminate his unauthorized absence. Article 7, Uniform Code of Military Justice, 10 U.S.C. § 807; Paragraph 19, *Manual for Courts-Martial, United States, 1969* (Revised edition); Article 3430100, Bureau of Naval Personnel Manual. In addition, the two officers exercised some control over appellant—the first doctor by taking him to consult with the psychiatrist, and the psychiatrist by instructing appellant to return on the following Monday.

In summary, we conclude that appellant's surrender was complete and his unauthorized absence terminated when he presented himself at the Naval Regional Medical Center and indicated his desire to turn himself in. *See United States v. Raymo*, 1 M.J. 31 (C.M.A.1975); *United States v. Acemoglu*, 21 U.S.C.M.A. 561, 45 C.M.R. 335 (1972); *United States v. Kitchen*, 5 U.S.C.M.A. 541, 18 C.M.R. 165 (1955). Consequently, it is necessary that the findings of guilty be modified to reflect this fact.

Accordingly, the findings of guilty as to the Charge and only so much of the specification thereunder as reflects an unauthorized absence from 6 October 1975 to 17 October 1975 are affirmed. Upon reassessment, only so much of the sentence approved on review below as provides for reduction to pay grade E-1 is affirmed.

Chief Judge CEDARBURG and Judge GLADIS concur.