UNITED STATES, Appellee,

v.

Private E–2 Milton B. COGLIN, SSN
267–27–5535, United States
Army, Appellant.

SPCM 14844.

U. S. Army Court of Military Review.

6 Jan. 1981.

Colonel Edward S. Adamkewicz, Jr., JAGC, Lieutenant Colonel John F. Lymburner, JAGC, Captain Kevin E. O'Brien, JAGC, and Captain Paul J. Moriarty, JAGC, were on the pleadings for appellant.

Colonel R. R. Boller, JAGC, Major Ted B. Borek, JAGC, Major Douglas P. Franklin, JAGC, and Captain Kenneth H. Clevenger, JAGC, were on the pleadings for appellee.

Before JONES, GARN and LEWIS, Appellate Military Judges.

## OPINION OF THE COURT.

JONES, Senior Judge:

The appellant pleaded guilty to an unauthorized absence of two weeks duration but was convicted of an absence of 19 weeks, as charged.[1] The issue raised below and again before this Court is whether appellant, by his presence on a military installation and his contacts with military personnel, terminated his absence at a time earlier than

that charged. We hold that he did not and we affirm.[2]

At the completion of his tour of duty in Korea, the appellant was reassigned to Fort Carson, Colorado. Instead of reporting to his new duty station, he went to Fort Benning, Georgia, his place of assignment prior to Korea and an installation much closer to his home in Florida. The appellant remained at Fort Benning for two or three weeks, living wherever he could find a spare bed in the barracks (with permission of the room occupant but without permission of a unit commander or first sergeant). During his stay at Fort Benning, appellant sometimes wore his uniform and sometimes wore civilian clothes.

The appellant went to Fort Benning to obtain a compassionate reassignment from Fort Carson. He spoke to an "E-7" at "personnel" who advised him of the appropriate procedure. Eventually the "E-7" told appellant that he did not have sufficient reasons to obtain a compassionate reassignment. Appellant contends that he advised the "E-7" of his absentee status.

The appellant went to Finance with his records in an unsuccessful attempt to be paid, and he spoke to the current first sergeant of his former company in an effort to get reassigned to that unit, to no avail. He identified himself properly to the individuals at Finance and to the first sergeant but he did not disclose to them that he was absent without leave. When he was unable to obtain pay or a compassionate reassignment, he departed Fort Benning and remained absent almost four more months before surrendering to military authorities at Fort Dix, New Jersey.

Supporting appellant's factual recitation was the stipulated testimony of a Sergeant Montgomery who was appellant's squad

---

1. Violation of Article 86, Uniform Code of Military Justice, 10 U.S.C. § 886.

2. The sentence adjudged and approved was a bad-conduct discharge, confinement at hard labor for four months, forfeiture of $150.00 pay per month for four months, and reduction to Private (E–1).

Four records of nonjudicial punishment were admitted in aggravation. Two were more than two years old (appellant's absences being considered) and should not have been admitted. We find no prejudice from this error, however.

leader during most of appellant's tour of duty in Korea. Sergeant Montgomery was subsequently transferred to Fort Benning. By stipulation he testified that he saw appellant on several occasions during a two-week period shortly after he arrived at Fort Benning and that he advised appellant on how to obtain a compassionate reassignment. The stipulated testimony does not indicate whether Sergeant Montgomery knew appellant was AWOL when he was at Fort Benning. Assuming, as appellant maintains, that Sergeant Montgomery knew he was AWOL, it is significant that appellant states he left Fort Benning when Sergeant Montgomery advised him to turn himself in or he, the sergeant, would turn him in.

■ It has long been a principle of military law that an unauthorized absence may be terminated by any proper exercise of military control over an absentee. *United States v. Jackson*, 1 U.S.C.M.A. 190, 2 C.M.R. 96 (1952). For a voluntary termination initiated by the absentee to become effective, several factors must be present.

■ First, the absentee must present himself to competent military authority with the intention of returning to military duty.[3] *United States v. Jackson, supra; United States v. Rayle*, 6 M.J. 836 (N.C. M.R. 1979); *United States v. Self*, 35 C.M.R. 557 (A.B.R. 1965). He must present himself personally, a phone call being insufficient, *United States v. Acemoglu*, 21 U.S.C.M.A. 561, 45 C.M.R. 335 (1972), but he need not report to a military installation; a recruiting office and a selective service office being sufficient for the purpose. *United States v. Kitchen*, 5 U.S.C.M.A. 541, 18 C.M.R. 105 (1955); *United States v. Raymo*, 1 M.J. 31 (C.M.A. 1975). Even a return to a military reservation does not automatically result in a termination as an absentee's casual presence on an installation for his own private purpose will not satisfy this requirement. *United States v. Jackson, su-*

pra; *United States v. Self, supra*. Additionally, the competent military authority to whom the absentee must present himself must be someone with authority to apprehend, e. g., a commissioned officer, *United States v. Raymo, supra*; a noncommissioned officer, *United States v. Kitchen, supra*; a military policeman, see *United States v. Reeder*, 22 U.S.C.M.A. 11, 46 C.M.R. 11 (1972). *See* paragraph 19a, Manual for Courts-Martial, United States, 1969 (Revised edition).

■ The second requirement that must be present for the termination of an absence is that the absentee must identify himself properly and must disclose his status as an absentee. *United States v. Raymo, supra; United States v. Jackson, supra; United States v. Rayle, supra*. Both identity as a member of the military and status as an absentee must be divulged. Furnishing information on the former while at the same time concealing, misrepresenting or even remaining silent on the latter would not suffice to supply the requisite degree of knowledge. An exception to this requirement that the absentee must affirmatively divulge his identity and status would be in those situations where the competent military authority was already aware of the absentee's status or, having a duty to inquire, could have determined the status by reasonable diligence. *United States v. Jackson, supra; United States v. Rayle, supra*.

■ The final necessary requirement for the termination of an absence is that the military authority, with full knowledge of the individual's status as an absentee, exercises control over him. *United States v. Raymo, supra*. The measure of military control exercised may be as seemingly unimportant as referring the absentee to some other individual to solve his problem. Again an exception would occur if the military authority declined to exercise control over the absentee or was slow in the exer-

---

**3.** A variation of this requirement would permit an absentee who did not present himself to military authority initially with the intent to return to duty to effect a termination by subse-

quently submitting to an attempted exercise of control after his status became known. *See United States v. Raymo*, 1 M.J. 31 (C.M.A. 1975).

cise of such control. In that event, the Government would not be permitted to deny a termination of absence because of the failure to exercise control. *United States v. Jackson, supra; United States v. Rayle, supra.*

■ In applying the facts of the instant case to the requirements discussed above, we find a deficiency in each of the three categories. First, the appellant did not present himself to competent military authorities with the intention of terminating his absence and returning to military duty. His whole purpose at Fort Benning was a private one—to obtain a compassionate reassignment and to get paid. He spoke to the E–7, the first sergeant, Sergeant Montgomery, and others for these reasons only. An intention to return to duty would not have arisen until appellant obtained the reassignment.

Although the appellant apparently identified himself properly, we find, contrary to his contention, that he did not divulge his status as an absentee to the E–7. Appellant testified that he told the E–7 that he was "late reporting to Fort Carson."[4] In evaluating appellant's testimony we are convinced that he misrepresented his true status to the E–7. Only through deception could he have continued his discussion for a 3 week period with an E–7 in personnel concerning a compassionate reassignment, issuance of a Transportation Request, and casual or partial pay without that noncommissioned officer turning him in. To accept appellant's examination, we would have to conclude that the E–7 advised him for this extended period without apprehending him or even counselling him to turn himself in. Our credulity does not stretch that far.

The appellant testified that he told Sergeant Montgomery, his former squad leader, that he was AWOL, and that Sergeant Montgomery responded that appellant should turn himself in or he (Sergeant Montgomery) would turn him in. The stipulated testimony of Sergeant Montgomery

was silent as to his knowledge of appellant's status. Accepting appellant's statement that he divulged his absentee status to Sergeant Montgomery as true, appellant still did not submit to military control when Sergeant Montgomery attempted to exercise such control. He departed the post instead. The first sergeant and the E–7, having no knowledge of appellant's status, made no effort to exercise military control over him.

In summary, appellant did not present himself to competent military authority at Fort Benning with the intention of returning to military duty, did not disclose his status as an absentee to two of the three noncommissioned officers with whom he had dealings, and thwarted the attempted exercise of military control by the noncommissioned officer to whom he disclosed his status. Under these circumstances, the appellant did not terminate his absence by his interlude at Fort Benning.

The findings of guilty and the sentence are affirmed.

Judge LEWIS concurs.

GARN, Judge, concurring in the result:

I do not agree that the appellant's testimony that he divulged his unauthorized absence status to an "E–7" at "personnel" at Fort Benning is incredible. I am satisfied, however, that the appellant was not subjected to, and did not intend to be subjected to, military control while he was at Fort Benning. Accordingly, I agree that his status as an unauthorized absentee was not terminated when he divulged his status to two noncommissioned officers at Fort Benning. *United States v. Self,* 35 C.M.R. 557 (A.B.R. 1965). I concur in affirming the findings and the sentence.

---

4. We discount the equivocal statement of appellant on redirect examination that he told the E–7 he was AWOL, especially in view of his negative response to a question by the military judge on the same issue.