UNITED STATES

v.

**Airman First Class Robert GUDAITIS,
FR 041–64–3689, United States
Air Force.**

**ACM S26321.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 4 Jan. 1984.

Decided 14 Aug. 1984.

Appellate Counsel for the Accused: Colonel Leo L. Sergi and Captain Kathleen G. O'Reilly.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert, Captain Kevin L. Daugherty and Lieutenant Colonel William H. Seckinger, USAFR.

Before RAICHLE, CANELLOS and CARPARELLI, Appellate Military Judges.

DECISION

CARPARELLI, Judge:

The issue in this case concerns the termination of an absence without leave (AWOL). The appellant was convicted, contrary to his pleas, of one AWOL from 2 April 1983 until 30 April 1983 and a second AWOL from 6 May 1983 until 14 October 1983.

The facts are not disputed. The appellant was assigned to the 463d Organizational Maintenance Squadron, Dyess Air Force Base, Texas. His commander, Captain Melton, granted him leave from 18 February 1983 until 13 March 1983 and two extensions of that leave which authorized appellant's absence through 1 April 1983. At 1905 hours on Saturday, 30 April 1983, the appellant presented himself to the security police desk at Hanscom Air Force Base, Massachusetts, where he spoke with the desk sergeant, Sergeant Van Pelt. The appellant identified himself by name and grade and correctly stated his organization, but said that his leave was to expire that

very day. Sergeant Van Pelt telephoned the security police desk at Dyess Air Force Base and was, in turn, connected with Captain Avellaneda. The ensuing conversation was impaired by misperceptions by both participants. Van Pelt believed Captain Avellaneda was the appellant's supervisor. In reality, however, Captain Avellaneda was the Operations Officer of the 463d Field Maintenance Squadron, not a person within the appellant's chain of command. The captain, on the other hand, erroneously believed that the absentee was a member of his squadron. He authorized Sergeant Van Pelt to issue a "five day provisional pass"[1] to the appellant.

Sergeant Van Pelt issued the pass and instructed appellant to return to Dyess Air Force Base by the most direct route available. When appellant then told Van Pelt that he did not have sufficient funds to return to his duty station, Van Pelt instructed him to contact Pease Air Force Base to inquire about military transportation to Dyess and, if none was available, to contact Hanscom Air Force Base Traffic Management Office (TMO) on Monday, 2 May 1983. Thereafter the appellant never again contacted Sergeant Van Pelt or Captain Avellaneda. His next contact with military authorities was on 14 October 1983 when he turned himself in to an Air Force recruiter in New London, Connecticut.

The government elected to prefer two specifications of AWOL premised on the theory that the 30 April episode at Hanscom terminated the AWOL which began on 2 April and that a second AWOL began when the provisional pass expired on or about 6 May.

At trial and again on appeal, appellant's counsel have consistently argued that these facts constitute a single AWOL from 2 April 1983 until 14 October 1983, citing *United States v. Raymo*, 1 M.J. 31 (C.M.A. 1975); *United States v. Jackson*, 1 U.S.C.

---

1. Air Force Regulation 125–3, paragraph 9–15, authorizes the issue of DD Form 460, Provisional Pass, under specified circumstances. Under the facts as Sergeant Van Pelt believed them to be he could properly issue such a pass. Had the appellant properly advised Sergeant Van Pelt of his AWOL status, Van Pelt could have properly issued a provisional pass to allow him time to return to his home station in a "military control" status.

M.A. 190, 2 C.M.R. 96 (1952); *United States v. Moyer,* 11 M.J. 568 (A.F.C.M.R. 1981); *United States v. Coglin,* 10 M.J. 670 (A.C.M.R.1981), *pet. denied* 11 M.J. 173; and *United States v. Rayle,* 6 M.J. 836 (N.C.M.R.1979). They note that appellant did not disclose the fact that he was AWOL when he presented himself to Sergeant Van Pelt and assert that he was not effectively returned to military control. As a result, they say, the AWOL which began on 2 April 1983 was not terminated until 14 October and the appellant cannot properly be convicted of two separate AWOL's. They pray that the conviction for AWOL beginning on 6 May and the bad conduct discharge be set aside. We find no error.

■ Both parties have invited our attention to the opinion of the United States Army Court of Military Review in *United States v. Coglin, supra,* and the summary regarding termination of AWOL presented in that case. The same summary was repeated in its entirety in *United States v. Moyer, supra,* and *United States v. Claussen,* 15 M.J. 660 (N.M.C.M.R.1983). As noted in the summary, an unauthorized absence may be *voluntarily* terminated by the absentee if: (1) the absentee presents himself or herself to competent military authority with the intention of returning to military duty; *United States v. Coglin, supra;* and *United States v. Rayle, supra;* and (2) either (a) the absentee identifies himself or herself properly and discloses his or her status as an absentee; *United States v. Coglin, supra; United States v. Raymo, supra; United States v. Jackson, supra;* and *United States v. Rayle, supra;* or (b) the absentee, having presented himself or herself, fails to disclose his or her status as an absentee, but the competent military authority is either already aware of the absentee's status or, having a duty to inquire, could have determined that status by reasonable diligence; *United States v. Rayle, supra; United States v. Jackson, supra.*

The summary also states:

The final necessary requirement for the termination of an absence is that the military authority, with full knowledge of the individual's status as an absentee, exercises control over him. *United States v. Raymo, supra* .... Again an exception would occur if the military authority declined to exercise control over the absentee or was slow in the exercise of such control. In that event, the Government would not be permitted to deny a termination of absence because of the failure to exercise control. *United States v. Jackson, supra; United States v. Rayle, supra.*

We will begin by applying the first two aspects of the rule to the facts before us and then discuss whether the third aspect must be applied in this case.

The appellant *presented himself* to a security police desk sergeant, *a military authority who could properly apprehend him.* See *United States v. Reeder,* 22 U.S. C.M.A. 11, 46 C.M.R. 11 (1972); and paragraph 19a, M.C.M., 1969 (Rev.). In addition, he accurately identified himself, his organization, and his station. He remained present while the desk sergeant contacted his home station and tried to talk with his commander. These circumstances leave no reasonable doubt that the appellant presented himself with the *intent to submit to military control* and return to his organization.[2] The first aspect of the test of voluntary termination is thus satisfied.

As regards the second aspect of the test, we find that the appellant did not disclose his absentee status to Sergeant Van Pelt. In their brief, appellate defense counsel assert that, because appellant did not disclose his status at that time, his AWOL was not terminated. We disagree.

■ In order for an AWOL to be terminated it is essential that a military authori-

---

2. Indeed, during his sworn testimony in mitigation and extenuation, the accused frankly admit-

ted such intent.

ty competent to apprehend the absentee have knowledge of the absentee's status. Termination, whether initiated by the absentee's surrender or by the exercise of military control, cannot be effected unless the military authority has such knowledge. In addition to knowledge of the absentee's status, termination requires either that (a) the absentee present himself to competent military authority with the intention to return to military control (thus effecting a voluntary termination) or (b) the military exercise control over the absentee regardless of the absentee's intent to surrender (thus terminating the AWOL at the pleasure of the government.)

It is true that an absentee can *most effectively* terminate an AWOL by presenting himself to competent military authority with the intention of returning to military duty *and* disclosing his absentee status. By doing so he most persuasively manifests his intention to return and gives the military authority actual knowledge of his status. Under such circumstances, even if the military fails to exercise control over him, it will not be permitted to deny a termination. *United States v. Jackson, supra; United States v. Rayle, supra.* It would be absurd, however, to conclude that a competent military authority who had knowledge of an absentee's status could decline to accept an apparent and proper surrender and refuse to exercise control simply because the absentee failed to confess that he was knowingly AWOL. Likewise, if an absentee under those circumstances soon thereafter again left his unit without authority, it would be equally absurd to allow him to claim that his failure to comply with the disclosure aspect of the voluntary termination rule negates the fact

that the military authority, nonetheless, knew of his status.

█ The pivotal issue in this case is not whether the appellant informed the authorities of his status but, given his intent to return to military control, whether the military authorities involved knew of his status or should have known of it. *United States v. Jackson, supra; United States v. Coglin, supra; United States v. Rayle, supra.* There can be no doubt that, before granting a provisional pass, Captain Avellaneda had a duty to confirm that the recipient of the pass was, in fact, a person over whom he had authority and that he had a duty to ascertain the recipient's current duty status. Had Captain Avellaneda exercised reasonable diligence, he would have checked and discovered that appellant was a member of the 463d Organizational Maintenance Squadron (OMS), not his own squadron. A simple telephone call to the OMS Commander, the OMS First Sergeant, or the OMS Charge of Quarters would undoubtedly have led to discovery of appellant's AWOL status. It is therefore appropriate to attribute constructive knowledge to the Air Force in this case.

█ The last remaining question is whether the exercise of military control was necessary to terminate appellant's AWOL. We have concluded that Sergeant Van Pelt's issuance of a provisional pass, and his instructions to appellant to contact Pease Air Force Base and Hanscom Air Force Base for transportation and to return to his organization by the most direct route available, constituted an exercise of military control over the appellant. *See United States v. Raymo,* 1 M.J. at 33; [3]

---

**3.** In *Raymo* the absentee appeared at the Selective Service Board in response to a letter he had received and not primarily to terminate his absence. Once there, however, he revealed his status and was directed by an Army officer to "turn himself into [sic] the FBI." The Court of Military Appeals found that the officer's instruction to the accused to go see the FBI was a means whereby he effectively exercised military control over the accused. The Court also found that the absentee's voluntary submission to military control was complete when he complied

with the officer's instructions. Under the facts of that case the Court found that the conjunction of the exercise of military control and the completed submission to that control terminated the absence. Although the Court looked to appellant's compliance with the officer's instructions as evidence of the absentee's intention to submit to military control, it, nevertheless, found that the instructions, standing alone, constituted an exercise of control. *See also United States v. Sandell,* 9 M.J. 798, 800 (N.C.M.R. 1980).

*United States v. Coglin,* 10 M.J. at 672. This conclusion, however, is not essential to our holding in this case. It is true that when the exercise of military control is attended by knowledge of the absentee's status, an AWOL is terminated regardless of the absentee's intentions. The exercise of control is not, however, a necessary requirement when the absentee presents himself to competent military authority with the intent to return to military control. A proper surrender, attended by knowledge of the absentee's status, can terminate an AWOL regardless of the exercise of control.

Having thus found that the accused was properly convicted of AWOL terminating on 30 April 1983, we have also considered the conviction of AWOL from 6 May 1983 until 14 October 1983 and found no error in law or fact. Accordingly, the findings of guilty and sentence are

AFFIRMED.

RAICHLE, Senior Judge, and CANEL-LOS, Judge, concur.