# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM S32394**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Tyrone R. BROOKS, Jr.**
Senior Airman (E-4), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 22 March 2017

———————————

*Military Judge:* Andrew Kalavanos.

*Approved sentence:* Bad-conduct discharge, confinement for 2 months, forfeiture of $1,000.00 pay per month for 2 months, and reduction to E-1. Sentence adjudged 20 October 2015 by SpCM convened at Joint Base Langley-Eustis, Virginia.

*For Appellant:* Captain Annie W. Morgan, USAF.

*For Appellee:* Major J. Ronald Steelman III, USAF; Captain Sean J. Sullivan, USAF; Gerald R. Bruce, Esquire.

Before MAYBERRY, SPERANZA, and JOHNSON, *Appellate Military Judges.*

Judge JOHNSON delivered the opinion of the court, in which Senior Judge MAYBERRY and Judge SPERANZA joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

———————————

JOHNSON, Judge:

A special court-martial composed of a military judge sitting alone found Appellant guilty in accordance with his pleas of one specification of absence

without leave, one specification of dereliction of duty, and one specification of making a false official statement in violation of Articles 86, 92, and 107, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 886, 892, 907. Appellant's adjudged and approved sentence consisted of a bad-conduct discharge, confinement for two months, forfeiture of $1,000.00 pay per month for two months, and reduction to the grade of E-1.

Before us, Appellant raises three assignments of error: (1) whether Appellant's guilty plea to absence without leave was improvident because he did not remain absent from his place of duty throughout the charged time frame; (2) whether it was improper for the staff judge advocate (SJA) to solicit a victim statement from Airman First Class (A1C) JR who did not meet the definition of a victim; and (3) whether a 7-day violation of the 30-day post-trial processing standard for forwarding the record of trial for appellate review warrants modest relief under *United States v. Tardif*, 57 M.J. 219 (C.A.A.F. 2002). In addition, although not raised by the parties, we address an error in the staff judge advocate's recommendation (SJAR) to the convening authority regarding Appellant's overseas and combat service.[1] Finding no error that warrants relief, we affirm the findings and sentence.

## I. BACKGROUND

Appellant was assigned to the inpatient squadron within the medical group located at Joint Base Langley-Eustis, Virginia. In approximately August 2012, he began performing duties as an Aerospace Medical Service Apprentice (AMSA) Course Phase II preceptor. Appellant had been trained and was aware that as a preceptor he was forbidden to engage in unprofessional relationships—to include sexual relations—with AMSA Course students.

In late October 2014, A1C JR began the AMSA Course as a student. Appellant was assigned to be her preceptor. In November 2014, Appellant began interacting with A1C JR in a personal capacity by text messages and on social media websites. On 28 November 2014, Appellant picked A1C JR up from her lodging on base and drove her to his off-base apartment. There they watched a

---

[1] This court specified the following issue for the parties to brief:

> WHAT, IF ANY, REMEDY SHOULD THIS COURT PROVIDE AS A RESULT OF THE STAFF JUDGE ADVOCATE'S ERRONEOUS ADVICE TO THE CONVENING AUTHORITY IN THE PERSONAL DATA SHEET ATTACHED TO THE STAFF JUDGE ADVOCATE'S RECOMMENDATION THAT APPELLANT HAD NO OVERSEAS OR COMBAT SERVICE?

movie, ate Chinese food, and drank alcohol before engaging in sexual intercourse. In the days that followed, Appellant called A1C JR approximately five times on her personal phone.

On 20 January 2015, Appellant was interviewed by agents of the Air Force Office of Special Investigations. After being properly advised of his Article 31, UCMJ, rights Appellant denied ever having sex with A1C JR.

Following this interview, Appellant's superiors at the inpatient squadron sent him to the medical support squadron located in a different building to perform administrative duties, with instructions to report back when the medical support squadron released him. On 30 January 2015, a Friday, Appellant was released from his temporary assignment at the medical support squadron and told to report back to the inpatient squadron effective the following Monday, 2 February 2015. Appellant failed to do so. Between 2 February 2015 and 8 May 2015, Appellant for the most part did not report for duty at all at either unit, leaving his superiors at the inpatient squadron with the mistaken impression he was still performing his temporary assignment. Appellant fostered that impression in early March 2015 when his supervisor sent him a text message asking how everything was going at the medical supply squadron, and Appellant responded that everything was going well.

On several occasions between 2 February 2015 and 8 May 2015, Appellant did go to the inpatient squadron for short periods when his supervisors requested that he attend brief training sessions or mandatory unit events. Appellant estimated these brief appearances at his unit occurred less than a dozen times. On those occasions, Appellant did not reveal to his superiors that he had not been regularly reporting for duty anywhere. Eventually his superiors learned from the medical supply squadron that Appellant had not performed duties there since 30 January 2015. When confronted, Appellant admitted this was so.

## II. DISCUSSION

### A. Providency of Appellant's Guilty Plea

A military judge's decision to accept a guilty plea is reviewed for an abuse of discretion. *United States v. Blouin*, 74 M.J. 247, 251 (C.A.A.F. 2015). "The test for an abuse of discretion in accepting a guilty plea is whether the record shows a substantial basis in law or fact for questioning the plea." *United States v. Moon*, 73 M.J. 382, 386 (C.A.A.F. 2014). "If an accused sets up matter inconsistent with the plea at any time during the proceeding, the military judge must either resolve the apparent inconsistency or reject the plea." *Id.* (quoting *United States v. Hines*, 73 M.J. 119, 124 (C.A.A.F. 2014) (internal quotation

marks omitted)). However, the conflict must be substantial, and the mere possibility of a conflict is not sufficient to reject a guilty plea on appeal. *Moon*, 73 M.J. at 386.

As charged in this case, the elements of the offense of absence without leave (AWOL) under Article 86, UCMJ, required the military judge to find: (1) on or about 2 February 2015, Appellant remained absent from his place of duty at which he was required to be, that is, the 633d Medical Group; (2) the absence was without proper authority from someone who could give Appellant leave; and (3) Appellant remained absent until on or about 8 May 2015. 10 U.S.C. § 886; *see* Department of the Army Pamphlet 27-9, Military Judges' Benchbook, ¶ 3-10-2. An unauthorized absence in violation of Article 86, UCMJ, may be voluntarily terminated by the absentee if the following conditions are met: (1) the absentee presents himself to competent military authority with the intention of returning to military duty; and (2) either (a) the absentee properly identifies himself and discloses his status as an absentee, or (b) the absentee, having presented himself, fails to disclose his status as an absentee but the competent military authority is either already aware of his absentee status or, having a duty to inquire, could have discovered that status by reasonable diligence; and (3) the military authority, with full knowledge of the individual's absentee status, either (a) exercises control over him, or (b) declines or delays to exercise control over him. *United States v. Gudaitis*, 18 M.J. 816, 818 (A.F.C.M.R. 1984); *see also United States v. Raymo*, 1 M.J. 31, 32 (C.M.A. 1975); *United States v. Moyer*, 11 M.J. 568, 569–70 (A.F.C.M.R. 1981); *United States v. Rogers*, 59 M.J. 584, 587 (Army Ct. Crim. App. 2003); *United States v. Coglin*, 10 M.J. 670, 672 (A.C.M.R. 1981).

Appellant contends his plea of guilty to AWOL from 2 February 2015 until 8 May 2015 was improvident because—as he told the military judge and as the stipulation of fact recites—he returned to his squadron on a number of occasions during that period in order to attend brief training sessions and mandatory unit events. In Appellant's view, this information before the military judge was inconsistent with his plea of guilty to having been absent for the entire charged period, creating a substantial basis in law and fact to question the plea. *See Moon*, 73 M.J. at 386. With regard to the three-part test for voluntary termination of an unauthorized absence articulated in *Gudaitis*, Appellant's argument appears to be: (1) by appearing at unit training and other events he presented himself with the intention of returning to duty; (2) although he did not identify himself as an absentee, his superiors would have discovered his absentee status by the exercise of reasonable diligence; and (3) his superiors either exercised or declined to exercise control over him during these appearances. 18 M.J. at 818. Therefore, Appellant argues his conviction for AWOL must be set aside and his sentence reassessed.

We do not find a substantial conflict between Appellant's guilty plea and the matters presented to the military judge. First, we assume *arguendo* without deciding that Appellant's multiple visits to his squadron to attend "various de minimis trainings and attend short mandatory events" at his superiors' direction amounted to presenting himself to military authority with an intention of returning to military duty. We acknowledge there is a substantial argument to be made to the contrary. Appellant explained to the military judge:

> I made a decision to absent myself from work. I don't recall the exact date, but I stopped going to work at the beginning of February. I would go in whenever someone texted or called me that they needed something from me, but other than that, I did not go. I returned to work full time at the beginning of May once my unit had realized I was not coming in on a regular basis.

Thus Appellant's general intention was not to return to duty, but to remain away. Yet in another sense, Appellant did return to military duty. Appellant appeared at his unit at the direction of his superiors for the official purposes of performing training and attending unit events. Thus, at least for the duration of these events, Appellant had arguably decided to return to military control, albeit temporarily. Appellant's case is thus unlike *Rogers*, cited by the Government, and *Coglin*, where the Army Court of Criminal Appeals (ACCA) affirmed the appellants' convictions for AWOL. In those cases, the ACCA found no voluntary termination of AWOL where "the return involves a casual presence for personal reasons." *Rogers*, 59 M.J. at 586; *see Coglin*, 10 M.J. at 671–73 (accused's presence on installation for private purpose of obtaining pay and inquiring about compassionate reassignment was not presentation with intent to terminate absence).

However, we need not decide this question because the second condition for voluntary termination was not met. Appellant did not disclose his absentee status, and his superiors would not necessarily have discovered his absentee status during his attendance at these brief events through the exercise of reasonable diligence. *See Gudaitis*, 18 M.J. at 818. Appellant had been instructed—by supervisors at both squadrons—to report back to his unit when his temporary administrative duties at the medical support squadron had concluded. However, the medical supply squadron evidently did not inform the inpatient squadron that Appellant had been released. Therefore, Appellant was not "missing" so far as his superiors knew. Appellant's response to his supervisor's text inquiry in March fostered the impression his duties at the medical supply squadron were continuing. Similarly, Appellant's attendance at specific events at the inpatient squadron when requested created the impression that nothing was amiss. Although the three-month gap between Appellant commencing his absence and his superiors discovering the fact is disconcerting,

that failure of discovery cannot be paired with the specific occasions when Appellant "presented" himself at his unit on request for particular events.

Appellant's case is therefore unlike the situation in *Gudaitis*, where this court found—under the particular facts of that case—the military authorities should have detected the appellant's AWOL status even though he did not identify himself as AWOL. 18 M.J. at 819. There, the appellant, who was stationed at Dyess Air Force Base (AFB), Texas, unexpectedly presented himself at the security police desk at Hanscom AFB, Massachusetts, claiming that his leave was due to expire the following day.[2] *Id.* at 817. Thus, the security forces desk sergeant at Hanscom AFB and squadron operations officer at Dyess AFB who dealt with the appellant were faced with an irregular situation that called for some measure of investigation. In Appellant's case, by contrast, his brief appearances created the appearance of normalcy.

Finally, to the extent Appellant's superiors exercised "control" over him during these brief events, they did not do so with full knowledge of his absentee status, because they were not in fact aware of his absentee status. As discussed above, their failure to ascertain his absentee status during these specific occasions was not due to a failure of reasonable diligence. Once Appellant's supervisors learned of his unauthorized absence, they promptly confronted him and reasserted control. Thus Appellant fails to satisfy the third prong of the test.

We find the record did not present the military judge with information substantially in conflict with Appellant's plea. Indeed, a fair reading of the record indicates Appellant's brief appearances at the unit, far from being intended to terminate his unauthorized absence, were intended to delay its discovery, and had just that effect. Because there was no substantial basis in law or fact to question Appellant's plea to absence without leave, the military judge did not abuse his discretion in accepting Appellant's plea.

## B. Staff Judge Advocate Solicitation of Victim Impact Statement

After trial, the SJA provided a memorandum to A1C JR informing her of the opportunity to present a written statement to the convening authority for his consideration prior to taking action on the results of Appellant's court-martial. A1C JR indorsed the memo, acknowledging her understanding and indicating she did not intend to provide such a statement. The SJA also indorsed the memo, confirming A1C JR did not, in fact, provide a statement. Appellant contends this solicitation was improper because A1C JR was not a "victim," although he concedes he "struggles to articulate" any prejudice in light of the fact A1C JR did not actually provide a statement.

---

[2] In fact, he had already been AWOL for 29 days at that point. *United States v. Gudaitis*, 18 M.J. 816, 817 (A.F.C.M.R. 1984).

Proper completion of post-trial processing is a question of law that we review de novo. *United States v. Sheffield*, 60 M.J. 591, 593 (A.F. Ct. Crim. App. 2004). If we find error, Appellant must nevertheless make some "colorable showing of possible prejudice" to his opportunity to secure clemency from the convening authority in order to secure relief. *United States v. LeBlanc*, 74 M.J. 650, 660 (C.A.A.F. 2015) (quoting *United States v. Scalo*, 60 M.J. 435, 437 (C.A.A.F. 2005)) (internal quotation marks omitted).

Both Article 6b, UCMJ, detailing the rights of crime victims, and Article 60, UCMJ, governing action by the convening authority, define a "victim" as a person "who has suffered direct physical, emotional, or pecuniary harm as a result of the commission of an offense" under the UCMJ. 10 U.S.C. §§ 806b(b), 860(d)(5). Rule for Courts-Martial (R.C.M.) 1105A(b) gives the same definition. Article 60(d)(1), UCMJ, requires that a victim of an offense for which an accused has been found guilty and sentenced "shall be provided an opportunity to submit matters for consideration by the convening authority" before the convening authority takes action on the court-martial. 10 U.S.C. § 860(d)(1). Similarly, R.C.M. 1105A(a) provides that a victim "shall have the right to submit a written statement to the convening authority after the sentence is adjudged," and R.C.M. 1107(b)(3)(A)(iv) specifically requires the convening authority to consider such a statement before taking action.

Appellant suggests that because A1C JR, as a trainee, also had a duty not to engage in an unprofessional relationship with her instructor, Appellant, and because no nonconsensual act was charged, A1C JR is not a "victim" for purposes of the convening authority's action. We disagree. The UCMJ and Rules for Courts-Martial define "victim" broadly, and it is entirely foreseeable that A1C JR might have suffered direct emotional or pecuniary harm as a result of Appellant's dereliction of duty. Appellant was A1C JR's superior both by virtue of his rank and his position as her instructor. The record indicates he initiated and pursued the relationship with A1C JR. Regardless of any independent duty on A1C JR's part to avoid such a relationship, Appellant's actions could foreseeably have caused emotional or pecuniary harm to A1C JR through damage to her Air Force career or otherwise. Far from error, we perceive due diligence on the part of the SJA to ensure a potential victim's rights under the law were upheld.

Furthermore, R.C.M. 1106(d)(5) permits the SJA to include with the SJAR "any additional matters deemed appropriate by the [SJA] or legal officer." This includes matters from outside the record of trial, provided that any such new matter that is adverse to the accused is provided to the Defense with an opportunity to respond. *See* R.C.M. 1107(b)(3)(B)(iii). Therefore, even if A1C JR had not met the definition of a "victim," the SJA could still have properly solicited

and provided her statement to the convening authority so long as Appellant was given notice and an opportunity to respond.

Finally, assuming *arguendo* the SJA's solicitation was error, we cannot discern any colorable showing of possible prejudice given that A1C JR did not provide a statement. For each of these reasons, Appellant's assignment of error warrants no relief.

## C. Post-Trial Processing Delay

Appellant's court-martial concluded on 19 January 2016 at Joint-Base Langley-Eustis, Virginia. The convening authority, located on the same installation, took action 57 days later on 16 March 2016. However, the record of trial (ROT) was not docketed with this court until 22 April 2016, 37 days after action. In *United States v. Moreno*, our superior court established a presumption of unreasonable post-trial delay when the convening authority does not take action within 120 days of trial, where a record of trial is not docketed with this court within 30 days of the convening authority's action, and where this court does not render a decision within 18 months of the case being docketed. 63 M.J. 129, 142 (C.A.A.F. 2006). Appellant contends we should exercise our authority under Article 66(c), UCMJ, 10 U.S.C. § 866(c), to grant modest relief by not approving his full reduction to E-1, because the 37 days that elapsed between the convening authority's action and docketing with this court exceeded the *Moreno* standard. *See Tardif*, 57 M.J. at 224.

There are two steps to our analysis of whether Appellant is entitled to relief for post-trial delay. First, we determine whether the delay in this case amounts to a denial of Appellant's due process right to speedy post-trial review and appeal. *Moreno*, 63 M.J. at 135. Next, even if we find no due process violation, we also consider whether this court should exercise its power under Article 66(c) to grant relief for excessive post-trial delay. *Tardif*, 57 M.J. at 224.

The Court of Appeals for the Armed Forces has identified four factors to consider in determining whether post-trial delay amounts to a violation of due process rights: (1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of his right to a timely review; and (4) prejudice to the appellant. *Moreno*, 63 M.J. at 135 (citing *United States v. Jones*, 61 M.J. 80, 83 (C.A.A.F. 2005), *United States v. Toohey*, 60 M.J. 100, 102 (C.A.A.F. 2004)). "No single factor is required for finding a due process violation and the absence of a given factor will not prevent such a finding." *Id.* at 135 (citing *Barker v. Wingo*, 407 U.S. 514, 533 (1972)). However, where an appellant has not shown prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

As described above, the lapse of time between the convening authority's action and the docketing of his case with this court exceeded the *Moreno* standard by seven days, establishing a facially unreasonable delay. *See Moreno*, 63 M.J. at 142. Therefore, the next question we consider is whether Appellant has been prejudiced by the delay. *See Toohey*, 63 M.J. at 362. Appellant does not identify any specific "particularized anxiety or concern" that is distinguishable from the normal anxiety experienced by appellants awaiting an appellate decision, and we find none. *Moreno*, 63 M.J. at 142. Balancing the remaining factors, although the Government's explanation for the delay is unsatisfactory, the relatively limited period in excess of the *Moreno* standard, coupled with the speed with which the trial-to-action phase was completed, convinces us the delay was not so egregious as to undermine the appearance of fairness and integrity within the military justice system. Therefore, we find no due process violation.

Next we consider whether Article 66(c) relief pursuant to *Tardif* is appropriate. 57 M.J. at 224. We are guided by factors enumerated in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), with no single factor being dispositive.[3] We are mindful of our superior court's admonition that "delay in the administrative handling and forwarding of the record of trial and related documents to an appellate court is the least defensible of all [post-trial delays] and worthy of the least patience." *United States v. Dunbar*, 31 M.J. 70, 73 (C.M.A. 1990) (internal hyphens omitted).

While, as mentioned, the action-to-docketing time here exceeded the *Moreno* standard by seven days, only 57 days elapsed between the conclusion of Appellant's trial and the convening authority's action, compared to *Moreno*'s standard of 120 days for a presumptively unreasonable delay. Although *Moreno* specifically established distinct standards for trial-to-action and action-to-docketing, and although efficiency in one phase of the process does not

---

[3] These factors include: (1) How long the delay exceeded the standards set forth in *Moreno*; (2) What reasons, if any, the Government set forth for the delay, and whether there is any evidence of bad faith or gross indifference to the overall post-trial processing of this case; (3) Keeping in mind that our goal under *Tardif* is not to analyze for prejudice, whether there is nonetheless some evidence of harm (either to the appellant or institutionally) caused by the delay; (4) Whether the delay has lessened the disciplinary effect of any particular aspect of the sentence, and is relief consistent with the dual goals of justice and good order and discipline; (5) Whether there is any evidence of institutional neglect concerning timely post-trial processing, either across the service or at a particular installation; and (6) Given the passage of time, whether this court can provide meaningful relief in this particular situation.

necessarily excuse neglect in another phase, on the whole the processing of Appellant's case has not been subjected to excessive post-trial delay.

We must balance this absence of severe delay against the absence of any valid explanation for the delay. The Government has provided an affidavit from the noncommissioned officer responsible for post-trial processing of courts-martial at the installation.[4] He states that, due to turnover and limited manning in the military justice section, he "lost oversight" of the processing of Appellant's ROT. As a result, the error was not noted until 12 April 2016, and the ROT was shipped the following day for overnight delivery to the Military Justice Division (JAJM) of the Air Force Legal Operations Agency, located at Joint Base Andrews, Maryland, for docketing with this court. The Government cannot explain why JAJM did not receive the ROT until 21 April 2016. In its brief, the Government claims these circumstances weigh in its favor. We cannot agree.

Nevertheless, considering the remaining *Gay* factors we conclude no extraordinary exercise of our Article 66(c) authority is warranted here. We discern no particular harm to Appellant from the delay. The delay has not lessened the disciplinary effect of Appellant's sentence. The delay has not adversely affected this court's ability to review Appellant's case or grant him relief, if warranted. Taken as a whole, the circumstances do not move us to reduce an otherwise appropriate sentence adjudged by the military judge and approved by the convening authority.

**D. SJAR Error**

The personal data sheet (PDS) the Government introduced at trial recited that Appellant had no overseas or combat service, although it did note he had earned the Global War on Terrorism Expeditionary Medal and Air Force Expeditionary Service Ribbon. The Defense made no objection. However, the military judge was also presented with Appellant's performance reports and several defense exhibits which, read together, indicate Appellant was deployed to Qatar for six months in 2012 and 2013.

The SJA attached the same PDS to the SJAR served upon trial defense counsel and provided to the convening authority prior to action. Again, the Defense alleged no error in the SJAR or the PDS attached to it. Unlike at trial, neither the Government nor the Defense submitted any performance reports, statements, or character letters that described Appellant's deployment to Qatar. Appellant now asserts the omission of Appellant's deployed service from

---

[4] So the individual describes himself. However, it is hardly necessary to state that no one paralegal bears entire responsibility for ensuring the efficient post-trial administration of a court-martial.

the PDS was plain error and requests a new post-trial process. The Government concedes the PDS was erroneous but contends there is no possibility Appellant was prejudiced by the error.

Proper completion of post-trial processing is a question of law this court reviews de novo. *Sheffield*, 60 M.J. at 593. Failure to timely comment on matters in the SJAR, or matters attached to the recommendation, forfeits any later claim of error in the absence of plain error. *LeBlanc*, 74 M.J. at 660 (citing R.C.M. 1106(f); *Scalo*, 60 M.J. at 436). To prevail under a plain error analysis, an appellant must show (1) there was an error; (2) the error was plain and obvious; and (3) the error materially prejudiced a substantial right. *LeBlanc*, 74 M.J. at 660 (citing *Scalo*, 60 M.J. at 436 (citation omitted)). The threshold for establishing prejudice from errors impacting an appellant's request for clemency from the convening authority is low, even in the context of plain error analysis, but there must be "some colorable showing of possible prejudice." *Id.* (citing *Scalo*, 60 M.J. at 437).

We find the PDS and, by extension, the SJAR erroneously stated Appellant had no overseas or combat service. Moreover, we find the error plain and obvious. A modicum of attention to detail would have identified the error, given that Appellant's performance reports referred to his deployed service, and the decorations recorded on the PDS itself clearly implied overseas service in support of deployed operations.

However, we do not find a colorable showing of possible prejudice. First, although the PDS omits Appellant's deployment to Qatar, it does include the Global War on Terrorism Expeditionary Medal and Air Force Expeditionary Service Ribbon that he was awarded for his deployed service. Second, no information available regarding Appellant's overseas service suggests it was so exemplary or noteworthy that it was likely to sway the convening authority's decision. Indeed, beyond a vague reference to "earning deployment training while visiting different parts of the world [and] teaming up with different . . . foreign militaries" in Appellant's memorandum to the convening authority, the clemency submission did not refer to his deployment at all. Third, the focus of Appellant's clemency request was his desire to be relieved of the bad-conduct discharge; however, as his counsel acknowledged and as the SJAR advised, the convening authority had no authority to alter the bad-conduct discharge. *See* 10 U.S.C. § 860(c)(4)(A). Finally, the pretrial agreement authorized the convening authority to approve a sentence to, *inter alia*, seven months of confinement with a bad-conduct discharge. Given that Appellant's sentence included only two months of confinement with a bad-conduct discharge, the convening authority was unlikely to find the sentence oppressive or deem clemency appropriate. Considering these circumstances together, we find no colorable showing the PDS error may have prejudiced the result of Appellant's clemency

request, and therefore we find no plain error that warrants relief. *See United States v. Parker*, 73 M.J. 914, 920–21 (A.F. Ct. Crim. App. 2014) (finding no material prejudice and declining to grant relief based on a similar omission in the appellant's PDS).

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

KURT J. BRUBAKER
Clerk of the Court